## HENRY C. EDWARDS

*v.*

## DAVID H. HAEGER.

*Opinion filed June 17, 1899.*

1. WATERS—*right of owner of soil to water resulting from percolation.* Water which is the result of natural and ordinary percolation through the soil is part of the land itself and belongs to the owner, and in the absence of any grant he may intercept it, even though the result be to interfere with the source of supply of springs or wells on adjoining premises.

2. SAME—*grant of right to water from wet lands construed.* A grant to the purchaser of mill property of the right to dig ditches upon wet lands of the grantor for the purpose of conveying water to the mill-race does not, by its terms, include the right to water percolating or seeping through high and dry portions of the premises.

3. EASEMENTS—*what easements are binding on subsequent purchaser.* A subsequent purchaser takes the estate subject only to easements created expressly or by implication from terms of former grants, or such others as are apparent from inspection of the premises.

4. SAME—*what necessary to charge subsequent purchaser with notice of* "*apparent*" *easement.* In order that an easement claimed to be apparent from an inspection of the premises shall be binding upon a subsequent purchaser, the sign of servitude must have existed upon the premises or the marks of the burden been open and visible.

5. INJUNCTION—*bill for injunction need not anticipate all claims of alleged easements.* A bill to restrain the defendant from interfering with the complainant's use of percolating water on his land need not anticipate claims of alleged easements not appearing expressly or by implication from the terms of the grant on which they are based, nor negative, by express averments, all imputation that such easements were apparent.

6. SAME—*when bill is sufficient to authorize restraining continuing trespass.* A bill alleging the commission of a trespass and a deliberate written threat that it will be repeated if complainant attempts to exercise the right claimed by him, and which states facts showing that the injury will be such that adequate compensation cannot be ascertained and made by way of a judgment at law, is sufficient to authorize the interference of a court of equity.

7. SAME—*insolvency need not be alleged if the injury is irreparable.* Where the injury complained of in a bill for injunction is irreparable it is not essential to the jurisdiction of equity that the bill shall also allege that the defendant is insolvent.

APPEAL from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

On a motion entered by the appellee, the circuit court of Kane county rendered a decree that a temporary injunction granted on a bill filed by the appellant be dissolved and that the bill be dismissed. This is an appeal to bring the decree in review in this court.

It appeared from the allegations of the bill that in the year 1848 one Thomas Deweese owned a number of town lots in the village of East Dundee and also a tract of land adjoining said lots on the north; that on certain of the lots was situated a grist mill operated by water power, and that water was conducted to the mill-race by means of a ditch which extended in a northerly direction through the said tract of land, and gathered water from two parcels of wet, springy land on said tract and from a small water-course which meandered through the northern portion of the tract. On the 7th day of January of that year Deweese conveyed the lots on which the mill was situated, together with other of the lots, to one Daniel M. Green. The deed conveyed the mill and its appurtenances and a strip of ground on each side of the water conductors in certain lots not conveyed by the deed, and contained a clause as follows: "As, also, the right of way and entry through and upon the lands of the said Deweese at any time, for the purpose of repairing and improving either branch of the mill-race which carries the water to the said mill, the said Green doing as little damage as the circumstances will permit, as, also, the right to cut a ditch or ditches on any part of the now wet land of the said Deweese at any time, for the purpose of conveying the water to either branch of the race aforesaid." The mill and its appurtenances passed by *mesne* conveyances to the appellee, Haeger. These conveyances also purported to invest the grantees thereof with the same water rights in the tract of land as did the

deed from Deweese to Green. Appellant, Edwards, on October 14, 1875, succeeded to the title held by Deweese to the tract of land by conveyance made subject to the rights vested in the owners of the mill property by the clause incorporated in the deed made by Deweese to Green. In 1884 or 1885 appellant sunk a well in one of said wet, springy parcels on the east side of the mill ditch, and by means of an underground pipe conducted water from the well westwardly under the mill ditch to his dairy barn on his lands west of the mill ditch. In May, 1896, the appellee contended this pipe conducted water from the source of supply of water he was entitled to enjoy for the use of his mill under the conditions expressed in the Deweese deed, and that he needed the water to supply power for the mill, and caused the pipe leading from the well to be cut off. Appellant then dug a well about one hundred and ten feet north-easterly from the old well, and, as he claimed, upon hard, dry land and beyond the margin of said wet, springy land, with the intention of conveying the water from the new well, by means of an underground pipe under the mill ditch, to his barn and other buildings on the westerly side of the mill ditch. The appellee ordered appellant's workmen away, filled up a part of the ditch which the workmen were excavating, and served upon appellant a written notice demanding he should suspend the work of opening the ditch or laying pipe therein, and notifying appellant that he, the appellee, without further notice, would remove any pipe thereafter placed by appellant leading through or under the mill ditch. The bill further alleged that the new well was excavated in hard, dry land of the appellant, and at a distance of one hundred and ten feet from the edge of the wet land; that there is not, and never had been, any flowing water from the site of the new well to the mill ditch or the said wet land, but that the water which collected in the well was underground percolating water, and that the pipe leading therefrom was placed

at such a distance underground as that it would in no-wise interfere with the mill ditch. The bill also alleged that the appellant had maintained a barn for his dairy cattle on his premises on the westerly side of said ditch, and that his barn was fitted with a system of pipes and drinking fountains for the purpose of conducting water to cattle in their stalls and to other parts of the barn 'for cooling milk; that complainant has not on his· farm, or elsewhere, any supply of water for his pipe system in the barns and cooling vats, except eastward up the hill beyond the Haeger ditch, same as he sought to use from the new well; that his said dairy consisted of an average of from 100 to 125 cows; that by reason of the use of the drinking fountains supplying the water constantly to the cattle in their stalls, the cattle thrived much better than by any other method, resulting in increased profits from the dairy; that the loss of the same by Haeger's· cutting off the water amounted to the destruction of a valuable right that could not be compensated in damages; that if said Haeger is allowed to cut off the water as he has done and threatens to continue doing, and which complainant believes he will do unless restrained by order of the court, complainant will suffer great and irreparable injury, etc. The bill further alleged that after the serving of the said notice by appellee on appellant, appellee entered appellant's land and excavated and removed soil and material therefrom, the same not being part of the banks of the ditch or any part of the wet land, but being hard, dry land, comprising no part of the reservations mentioned in the Deweese deed.

The relief prayed for was that a temporary injunction should issue, restraining the appellee from interfering to prevent the appellant from excavating a ditch and placing a pipe therein, as contemplated by him, and for an accounting concerning the damages done by the appellee in excavating the soil aforesaid, and for the damages in depriving the appellant of water for his stock, etc., and

for a decree ordering the appellee to fill up the excavations made by him and to restore the premises to their former condition, and that the temporary injunction be made permanent. A temporary injunction was issued as prayed on the third day of September, 1896, and appellant proceeded at once to complete the work of laying the underground pipe from said new well to his barn.

Appellee answered the bill on the 29th day of October, 1896, and replication thereto was filed on the same day. *Ex parte* affidavits were prepared by the contending parties during the months of October and November, 1896, but no steps were taken in court in the cause and no order entered therein, other than orders continuing the cause, until January 21, 1899, on which day appellee exhibited a motion to dissolve the injunction and dismiss the bill for want of equity. The motion was on the same day submitted to the court, and the affidavits referred to and certain exhibits were then produced in court in support of and against the motion. The court decreed the injunction should be dissolved. Counsel for the appellant (complainant below) moved the cause to be referred to the master in chancery to take and report the proofs, but the court overruled the motion and the complainant excepted. Thereupon the court entered a decree that the bill "be dismissed for want of equity," and the appellant prosecuted this appeal.

JOHN W. RANSTEAD, DAVID B. SHERWOOD, and HOPSON & HOLLEMBEAK, for appellant:

In determining the extent of an easement granted by deed, the deed alone must determine. Goddard on Easements, 275; *Railroad Co.* v. *Koelle*, 104 Ill. 460.

Easements by implication, as an appurtenant, must be open and visible. *Ingals* v. *Plamondon*, 75 Ill. 118; *Cihak* v. *Klekr*, 117 id. 653; *Torrance* v. *Conger*, 46 N. Y. 349.

No man will be presumed to have made the grant of an easement such that its exercise may be large enough

to destroy the usufruct of his property.   *Tinicum Fishing Co.* v. *Carter*, 61 Pa. St. 42.

In the absence of an express grant the owner of the soil has the right to all the water that may be underneath the surface of the ground, and he may dig a well or lay pipes and drains, or both, so as to collect and use all the water that can be gathered by percolation or from unknown underground streams, even though by so doing he may cause inconvenience or injury to his neighbor. *Acton* v. *Blundell*, 12 M. & W. 324; *Chasemore* v. *Richards*, 5 H. & N. 982; *Rawstrom* v. *Taylor*, 11 Exch. 369; *Broadbent* v. *Ramsbotham*, id. 602; *Wheatley* v. *Baugh*, 25 Pa. St. 528; *Haldeman* v. *Bruckhart*, 45 id. 514; *Lybes' Appeal*, 106 id. 106; *Hanson* v. *McCue*, 42 Cal. 303; *Houston* v. *Leach*, 53 id. 226; *Railway Co.* v. *Defour*, 30 Pac. Rep. 783; *Davis* v. *Spaulding*, 157 Mass. 431; *Greenleaf* v. *Francis*, 18 Pick. 117; *Chesley* v. *King*, 74 Me. 164; *Delhi* v. *Youmans*, 45 N. Y. 369; *Roath* v. *Driscall*, 20 Conn. 533; *Quinn* v. *Railway Co.* 63 Iowa, 510.

The bill should have been retained and the cause referred to the master to take proofs on the issues made, and it was error to dismiss the bill.   *Beam* v. *Denham*, 2 Scam. 58; *Hummert* v. *Schwab*, 54 Ill. 142; *Terry* v. *Hamilton School*, 72 id. 576; *Gillett* v. *Booth*, 6 Ill. App. 429; *Martin* v. *Jamison*, 39 id. 248; *Clabby* v. *Sheldon*, 47 id. 166; *Woerishoffer* v. *Railway Co.* 25 id. 84.

BOTSFORD, WAYNE & BOTSFORD, for appellee:

An injunction will not issue to restrain a trespass. This proposition requires no citation of authorities.

Where a bill shows no equity on its face an injunction issued thereon may be dissolved on motion or demurrer. Starr & Curtis' Stat. chap. 69, sec. 15; *Farrell* v. *McKee*, 36 Ill. 225; *Parkinson* v. *Trousdale*, 3 Scam. 367.

Where the bill is purely for injunction, although other relief is sought which, of itself, does not furnish ground for equitable consideration, the order made for the dissolution of the injunction is a final decree.   *County of Cook*

v. *Davis*, 143 Ill. 151; *Weaver* v. *Poyer*, 70 id. 567; *Farrell* v. *McKee*, 36 id. 226; *Smith* v. *Powell*, 50 id. 21.

Where a bill is dismissed as to the portion founded on the right to equitable relief, and leaves only legal rights to be ascertained, jurisdiction of the court fails. *County of Cook* v. *Davis*, 143 Ill. 151; *Hadley* v. *Morrison*, 39 id. 392; *Daniel* v. *Green*, 42 id. 471; 1 Story's Eq. Jur. 458; *Green* v. *Spring*, 43 Ill. 280.

Where one grants a mill or other improvement for the enjoyment of which an easement is used over or upon other lands of the grantor, such easement passes as an appurtenant to the thing granted. *Hadden* v. *Shoultz*, 15 Ill. 581; *Mason* v. *Merrill*, 129 id. 503; *Miller* v. *Price*, 42 id. 404.

When anything is granted, all the means to attain it and all the fruits and effects of it are granted also, and shall pass, inclusive with the thing, by the grant of the thing itself, without the words "*cum pertinentiis*," or any such like words. *Railway Co.* v. *Smith*, 111 Ill. 363; *Aiken* v. *Boardman*, 2 Metc. 463.

A grantor can so grant and covenant that he and those claiming under him will be precluded from interfering with the supply of even percolating water .to the dominant land, and may thus prevent uses of the servient land which are reasonable and would be otherwise justifiable. *Whitehead* v. *Park*, 2 H. & M. 870; *Manufacturing Co.* v. *Veghte*, 69 N. Y. 16; *Minard* v. *Courier*, 32 Atl. Rep. 472.


Mr. JUSTICE BOGGS delivered the opinion of the court:

A motion to dissolve an injunction may be based upon an alleged want of equity apparent upon the face of the bill, the motion having the efficacy of a demurrer to the bill, or, after the coming in of the answer, upon the state of the case in matter of fact as shown by the allegations of the bill and of the answer and proofs in support of the bill and answer, respectively, or, as in this instance, on both such grounds. When the motion rests on both grounds, the first in proper order for decision is whether

the allegations of the bill disclose a state of case warranting the granting by a court of chancery of the writ of injunction. The bill in this case alleged the new well was dug in hard, dry land and that the water which came into it was "underground percolating water," and counsel for appellant contend that under the construction of those clauses in the deed made by Deweese to Green upon which are based such rights as appellee may have, appellee has no right in seeping or percolating underground water in the hard, dry land, but only to such "water as belongs to wet land." Appellee, though denying the well only intercepted water percolating in the earth, insists the legal effect of the grant is to preclude the appellant from intercepting, by means of the well, percolating water which would have otherwise reached the "wet and springy" ground,—and this contention is one of the reasons for the position the allegations of the bill are insufficient.

Water which is the result of natural and ordinary percolation through the soil is part of the land itself and belongs absolutely to the owner of the land, and, in the absence of any grant, he may intercept or impede such underground percolations, though the result be to interfere with the source of supply of springs or wells on adjoining premises. Upon this proposition there is, so far as we are advised, no dissension in the decisions of courts or in the writings of the authors of text books. Nor does appellee contend any different rule prevails, in the absence of a grant creating a right to percolating water in another than the owner of the soil. The grant here under consideration does not in terms vest the person entitled to the benefit thereof with the right to any water except that in the "wet land," and we are unable to perceive that an implication of any other or further right arises from the language employed in the instrument creating the grant. If any right exists in favor of the party to be benefited by the grant, in water percolating in other than the wet lands, it must arise other-

wise than by force of any express or implied meaning
to be gathered from the grant. The appellant not being
the author of the grant but a subsequent purchaser of
the property, would take the estate subject only to the
easements created expressly or by implication from the
terms of the grant, or such other easements as were
apparent from an inspection of the premises. (*Ingals* v.
*Plamondon,* 75 Ill. 118.) To affect a subsequent purchaser
by implication, the "apparent sign of servitude must have
existed on the premises" or the "marks of the burden
must have been open and visible thereon,"—to quote and
apply expressions of this court in the case last cited.

It was not essential to the sufficiency of the bill, or
possible in such a case as this, that the complainant
should endeavor to anticipate all claims of alleged ease-
ments not appearing expressly or by implication from
the grant, or should negative, by express averments, all
imputation that the burden of such easements was "obvi-
ous and apparent." Moreover, it is unreasonable to be-
lieve the original parties to the grant intended that the
easement should extend to water percolating or seeping
through the high and dry portions of the premises. Such
an intention would result in the conversion of practically
the entire tract to the use of the mill, and would tend
largely to prevent the improvement thereof and in a great
degree destroy its usefulness. The nature and tendency
of such a burden upon land is so far opposed to the pub-
lic good as that a grant should not be construed to create
it unless language is employed which will not admit, rea-
sonably, of any other construction. Deeds containing
reservations of the privilege of taking water from springs
or granting the privilege of drawing water from wells
have uniformly been held to confer no right in water
which naturally seeped or percolated through the land,
though the springs or wells derived their supply of water
therefrom, and the doctrine in such instances is well es-
tablished that the owner of such land may lawfully sink

wells or make other excavations and collect percolating water which otherwise would feed the springs or supply the wells. *Davis* v. *Spaulding,* 157 Mass. 431; *Lybes' Appeal,* 106 Pa. St. 106; *Chesley* v. *King,* 74 Me. 164; 27 Am. & Eng. Ency. of Law, pp. 430, 431, and notes.

The question of the effect of the motive prompting the interference with the source of supply of water by collecting percolating water, which has been the subject of conflicting decisions in the courts of different States, does not arise in this investigation, as it clearly appears from the allegations of the bill the appellant had lawful right to dig the new well and conduct the water by pipes to his barn and other buildings, it appearing from the allegations of the bill the work of laying the pipe from the well to the barn was being prosecuted in such manner as not to interfere with the operation of the mill ditch.

It is urged an injunction will not be granted to restrain a trespass. This is the rule as to a single act of simple trespass to property, but where a trespass has been committed and repetitions thereof are threatened, and the injury which follows such trespass is irreparable in damages, equity will interfere by injunction. (*Owens* v. *Crossett,* 105 Ill. 354; *Poyer* v. *Village of Desplaines,* 123 id. 111; 10 Am. & Eng. Ency. of Law, p. 881.) The bill under consideration alleges the commission of a trespess and a deliberate written threat that it will be repeated as often as appellant attempts to exercise the right, and states facts showing that the mischief and injury which such trespasses will occasion are of such nature that the damage to the appellant cannot be ascertained or computed and adequate compensation therefor made by way of a judgment at law awarding money damages. This is sufficient to authorize a court of equity to restrain a threatened injury. (10 Am. & Eng. Ency. of Law, p. 835, and authorities cited in note 2; *Wahle* v. *Reinbach,* 76 Ill. 322; *Clowes* v. *Staffordshire Co.* 8 Ch. App. 125.) When the injury is irreparable it is not essential to equity jurisdiction

a bill for an injunction shall also allege the party to be restrained is insolvent.

The motion to dismiss for want of equity appearing on the face of the bill should have been overruled.

The motion to dissolve the temporary injunction brought before the court for consideration the issues of fact raised by the bill and the answer thereto and the state of case developed by the *ex parte* affidavits produced by the respective parties. The position of counsel for appellee as to the issues of fact is, that the water which came into the new well was not percolating water, but water which flowed there from a subterranean water-course; that in order to divert the water from such water-course into the well, a trench was dug from the well, underneath the said water-course, and loose-jointed tile placed in the trench to conduct the water flowing in such water-course into the well; that the water-course was not visible on the surface where the well was excavated, but that it had a channel and came to the surface in a depression between two knolls or ridges below the well and there united with other waters, and from thence flowed into the low, wet land, and constituted water which appellee had the right to take, by means of ditches, into the mill-race. The affidavits of eight affiants were presented by appellant and of six affiants by appellee. We have carefully consulted these affidavits. In view of the fact the affiants were not subject to cross-examination but their statements were made *ex parte*, and as the decree is to be reversed and the cause remanded for a hearing upon the merits, in the course of which all witnesses may be subjected to cross-examination, we deem it better we should not discuss the facts as disclosed by the affidavits or refer thereto further than to say we cannot assent that the weight of the testimony thus adduced justified the dissolution of the temporary injunction.

We are of opinion the chancellor erred in granting the motion to dissolve the injunction. The decree will there-

fore be reversed and the cause will be remanded, with
directions to overrule the motion to dissolve the injunc-
tion and to proceed to a final hearing upon the issues
made by the pleadings.    *Reversed and remanded.*