CASEYVILLE TOWNSHIP ROAD DISTRICT, Plaintiff-Appellant, v. UNION-ELECTRIC COMPANY, Defendant-Appellee.

(No. 70-23;

Fifth District—October 7, 1971.

Robert L. Jennings, of Belleville, for appellant.

Pope and Driemeyer, of East St. Louis, (Kenneth J. Schuessler, of counsel), for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff Caseyville Township Road District, a municipal corporation, brought this action for a declaratory judgment against Union Electric Company to have the court declare the respective rights of the parties in an easement across plaintiff's land deeded to defendant by plaintiff's predecessors in title. The trial court entered a judgment in favor of defendant and plaintiff appeals.

The case was submitted on a stipulation of facts. Plaintiff purchased the strip of property involved in this case, described as a right-of-way, from the Illinois Terminal Railroad Company by a quitclaim deed dated April 10, 1967 for $4101.80. On December 31, 1940 the railroad company entered into an easement agreement with Union Electric Company of Illinois, the predecessor of Union Electric Company whereby it granted and conveyed to the electric company, its successors and assigns, the perpetual right and easement to maintain and replace certain electric transmission lines which were then in existence across the railroad's right-of-way. The tenth paragraph of this agreement provided:

"Said Electric Company further agrees that it will raise its transmission wires at the entire expense of said Electric Company to provide proper clearance as provided by law, if at any time in the future Railroad Company may desire to construct any track or tracks upon the land occupied by said transmission lines *and to remove and relocate any pole or poles or structure or structures at its own cost and expense on said right-of-way, should it be found necessary by reason of use by Railroad Company of the ground occupied by such pole or poles or structure or structures, the Railroad Company agreeing to furnish the land to be occupied by such removed, replaced, or relocated pole or poles or structure or structures.*" (Emphasis added.)

The transmission line was still in existence in 1967 and the quitclaim deed from the railroad company to plaintiff stated: "This deed is made subject to the right of the Union Electric Company, its successors and assigns, to operate and maintain power transmission lines over and upon the above described property."

In 1968 plaintiff contemplated building a Motor Fuel Road along the right-of-way acquired from the railroad company which would necessitate the relocation of the existing transmission lines. Defendant did not object to the relocation of the lines provided plaintiff would bear the cost. Plaintiff insisted that the cost should be borne by the electric company by virtue of the terms of the easement agreement. The estimated cost of the proposed one-mile Motor Fuel Road is $28,000, the estimated cost of relocating the transmission lines is $27,000, and there is sufficient land along the right-of-way to provide for relocation of the lines.

The trial court found that plaintiff had the right to require relocation of defendant's existing electrical transmission lines, that plaintiff furnish defendant with land within the present right-of-way to effect the relocation and that plaintiff pay the cost of that relocation.

■■ Plaintiff has presumed that it succeeds to all the rights and burdens imposed by the easement agreement and argues as does defendant that the agreement must be construed to effectuate the plain intent of the parties and in so doing, the whole instrument must be considered and the intention determined from the language of the agreement. We agree.

In the fourth paragraph of the agreement the railroad company granted to the electric company, its successors and assigns, the perpetual right and easement to maintain, operate and replace the transmission lines across the right-of-way as they were then located or may in the future be located. In the seventh paragraph the railroad company reserved to itself "its successors and assigns" the right to abandon any portion of the right-of-way in which event it would give reasonable notice to the electric company and would use its best efforts to secure to the electric company all rights necessary for the continued operation of the lines, but any cost involved in that event would be borne by the electric company. In paragraph eight the railroad company reserved to itself "its successors and assigns" the right to attach wires to the transmission line poles for the purpose of establishing a telephone line for its own uses. In the ninth paragraph it was agreed that nothing in the agreement would prevent the railroad company "its successors and assigns" from the full use and enjoyment of the land as may lie and exist between the wood poles or structures of the electric company. The twelfth paragraph provides that the railroad company agreed to hold harmless the electric company, "its successors and assigns" from any claims or damages arising in certain

specified occurrences. In the thirteenth paragraph the electric company agreed to hold harmless the railroad company "its successors and assigns" from all damages arising out of certain specified occurrences.

Plaintiff argues that since the railroad company reserved certain rights to its successors and assigns in the above-mentioned instances, it is not unreasonable to conclude that the original parties intended that should it become necessary to relocate the lines for any purposes, the expense of relocation would be borne by the electric company, especially in view of the fact that in every instance in which the electric company would be required to relocate its lines, the agreement expressly provided that the electric company would bear the cost as in the tenth paragraph where relocation would become necessary by use of the railroad company. Plaintiff further agrees that any construction that Union Electric should bear the expense of relocation only where it was necessary for use by the railroad company or for railroad purposes is too narrow, is "inequitable, unusual and is such that a reasonable man would not be likely to enter into. It cannot be seriously contended that the owner of the fee would, in addition to the burden of an easement, take on the additional burden of paying the expense of relocating the lines should it find a need for the land."

Defendant contends that the language of the agreement is unambiguous and requires no construction; that the tenth paragraph expressly provides that the electric company would relocate at its cost its transmission lines on the right of way only where it would be found necessary by reason of use by the railroad company; that the terms of the tenth paragraph do not extend to the successors or assigns of the railroad company by express omission; that the railroad intended to protect its use of the property only during the period of its ownership of the right of way and that the express omission of the term "successors and assigns" in the tenth paragraph is controlling of the parties' intent.

■■ In determining the intent of the parties from the instrument as a whole, the logic of defendant's argument is more persuasive. The language of the tenth paragraph is explicit and unambiguous, that the electric company agrees "to remove and relocate any pole or poles or structure or structures at its own cost and expense on said right of way should it be found necessary by reason of use by railroad company of the ground occupied by such pole or poles or structure or structures; the railroad company agreeing to furnish the land to be occupied by such removed, replaced or relocated pole or poles or structure or structures." The rights of the railroad company under this paragraph are not reserved to its successors or assigns as are other rights embodied in other paragraphs of the agreement. Of the few factors available to determine the original

parties' intent, this factor seems most compelling. The difficulty with plaintiff's argument that this result imposes a hardship or inequitable agreement upon them is that we are not construing an agreement made between plaintiff and defendant. The agreement was entered into between the railroad company and the defendant and the fairness of that agreement as between those parties is not at issue; rather, at the time plaintiff purchased this property from the railroad company the transmission lines were existing and open and obvious on the land and plaintiff had express notice of the easement agreement in its deed to the right of way, and purchasers of land burdened with an easement take the land subject to easements expressly created of which they have notice and such other easements as are apparent from an inspection of the premises. *Edwards v. Haeger,* 180 Ill. 99.

We cannot say that it was the plain intent of the parties to the agreement that in the event a third party, or assignee of the right of way, wished to build a highway on the right of way that the electric company would pay the expenses of moving its lines, because there is nothing in the agreement from which it can be even inferred that either of the parties contemplated the event of a highway being built thereon, let alone the event of a third party or assignee building a highway thereon. The parties simply did not contemplate, and therefore formed no intent with reference to moving the lines in the event a part of the right of way was to be used for highway purposes. Such eventuality was obviously not considered by either of the parties at the time they entered into the easement agreement.

■■ We believe the plain, unambiguous language of paragraph 10 of this agreement means that the electric company would be compelled to remove and relocate the poles and structures mentioned in the agreement at its own expense only if the railroad desired to use the right of way for railroad purposes. The agreement surely did not intend that the electric company would have this obligation if the railroad desired to build a public road as this would not be a railroad purpose. Under the agreement the electric company had a duty to relocate at its own expense only if the railroad desired to use the right of way for railroad purposes. Since the railroad could not compel the electric company to pay for relocating except for railroad purposes, its successors in title could not compel it to pay for relocating the wires to build a public road, which would be a non-railroad purpose. Caseyville Township could not acquire any more benefits from paragraph 10 of the agreement than the railroad had.

We conclude therefore that the agreement by defendant to pay the cost of relocation of the transmission lines where it became necessary by

reason of use to be made by the railroad company was limited to the railroad company and the benefit thereof did not pass to the plaintiff by virtue of the conveyance by the railroad.

Accordingly, the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER, P. J., and JONES, J., concur.