J. B. LEE, Plaintiff-Appellant, *v.* THE CITY OF PONTIAC *et al.*,
Defendants-Appellees.

Fourth District   No. 16967

Opinion filed August 31, 1981.

Irwin L. Kass, of Fellheimer Law Firm, of Pontiac, for appellant.

Thompson, Strong & Blakeman, Ltd., of Pontiac, and Costigan & Wollrab and Richard E. Stites, of Livingston, Barger, Brandt, Slater & Schroeder, both of Bloomington (C. Thomas Blakeman, of counsel), for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:
This appeal presents an issue which the Illinois Supreme Court has not addressed since 1899, namely, the subject of percolating waters.

Problems with this subject are ordinarily thought to be confined to the more arid parts of the United States, but recent concerns with water quality and quantity, coupled with changes in demography and climatic conditions in this State, cause a re-examination of our law in the light of plaintiff's invitation to us to overrule prior authority. While such action is clearly beyond the province of this court, a review of existing doctrines may not be useless.

The facts in the instant case are not complex and the circuit court of Livingston County disposed of the matter on the pleadings. The trial court's final order dealt with the fifth amended complaint which was in 24 counts. All counts concerned with percolating water were dismissed with prejudice under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45) and on all remaining counts, which concerned definitely ascertainable waters, the trial court entered summary judgment in favor of the defendants upon plaintiff's admission by stipulation that definitely ascertainable waters were not involved in the litigation. Plaintiff appeals only the section 45 dismissal.

The pleadings indicate that the plaintiff owns and operates a business on premises on the southeast edge of the City of Pontiac, and that in connection with that business there was a well which was fed by percolating waters. In June 1976, the City authorized the widening and deepening of an existing drainage ditch located east of plaintiff's premises. In October 1976, plaintiff discovered that his well had gone dry. His suit against the City, its engineering consultant, and the excavating company, alleged negligence in failing to take precautions against damage to his well and in failing to conduct an investigation and to make tests to determine the effect on his well of the alterations in the drainage ditch. As previously indicated, the trial court dismissed the complaint with prejudice for failure to state a cause of action.

■■ We note at the outset that plaintiff has attached to his brief in this court a variety of exhibits relating to water resources in Illinois and in the Pontiac area, together with an engineering study of subsurface water in the vicinity of his former well. These are not any part of the record in this case, and our consideration will be confined to the question whether the well-pleaded allegations of fifth amended complaint state a cause of action without reference to material outside the pleadings. *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749.

> "Percolating waters may be defined generally as those which ooze, seep, filter, or percolate through the ground under the surface without a definite channel, or in a course that is uncertain or unknown and not discoverable from the surface without excavation for that purpose." 78 Am. Jur. 2d *Waters* §155 (1975).

Three rules have developed in the United States with regard to

percolating waters. For convenience they are generally referred to as the "common law" or "English" rule, the "reasonable use" rule, and the "correlative rights" rule. The latter two are sometimes lumped together as the "American" rule.

The statement of the rules and the jurisdictions in which one or another has been adopted are fully set forth in 78 Am. Jur. 2d *Waters* §§157, 158 (1975), and in 93 C.J.S. *Waters* §93c (2), (3), (4) (1956), and need no extended reiteration here.

Plaintiff poses two questions to us: Which rule does Illinois follow? Which rule ought Illinois to follow?

There are two reported Illinois decisions on the subject of percolating water; one by the supreme court in *Edwards v. Haeger* (1899), 180 Ill. 99, 54 N.E. 176, and one by the appellate court in *Behrens v. Scharringhausen* (1959), 22 Ill. App. 2d 326, 161 N.E.2d 44. In *Edwards*, the supreme court said:

> "Water which is the result of natural and ordinary percolation through the soil is part of the land itself and belongs absolutely to the owner of the land, and, in the absence of any grant, he may intercept or impede such underground percolations, though the result be to interfere with the source of supply of springs or wells on adjoining premises." (180 Ill. 99, 106, 54 N.E. 176, 177.)

While the court did not expressly state that it was following the English rule, most authorities consider the foregoing statement to place Illinois in that category. 78 Am. Jur. 2d *Waters* §157 (1975).

The *Behrens* court questioned whether Illinois came under the English rule and in doing so quoted further language from *Edwards*:

> "The question of the effect of the motive prompting the interference with the source of supply of water by collecting percolating water, which has been the subject of conflicting decisions in the courts of different States, does not arise in this investigation, * * *." (180 Ill. 99, 108, 54 N.E. 176, 178.)

*Behrens* further indicated the existence of a growing concern about future water supply and expressed the hope that the supreme court might announce a new doctrine.

■■ In the instant case, plaintiff follows the *Behrens* lead and asks us to overrule *Edwards* and take Illinois into the American rule column. He further argues that *Edwards* lends only tenuous support to the English rule, which he deems to be antiquated. It is obviously beyond our constitutional power to ignore or overrule a decision of the supreme court, and we do not agree that *Edwards* lends such slight aid to the English rule. Even if it were within our power to act as plaintiff recommends, we have serious reservations concerning the practicality of the American rule.

In our judgment, *Edwards* stands forthrightly upon the English rule, and the further language raising the question of motive was only a limited inquiry into what appears to be a limitation on that rule, namely, that if the landowner in taking percolating waters is motivated by malice or ill will, neither the English rule nor the American rule will apply. 93 C.J.S. *Waters* §94 (1956).

As to the question of the antiquity of *Edwards*, we note a parallel from the State of Ohio. In 1977, the Ohio Court of Appeals decided *Huelsmann v. State* (1977), 56 Ohio App. 2d 100, 381 N.E.2d 950, in which the court noted that the common law rule had been established in Ohio by an 1861 decision and was still the law. It rejected the concept of reasonable use. The French sum it up in their axiom, *"Plus ça change, plus c'est la même chose."*

The American rule has been divided into two by the decisions of other courts. Some have adopted the reasonable use rule and others the correlative rights rule. Both appear to be aspects of the same underlying doctrine and both present difficult problems.

The reasonable use rule limits the landowner to an amount of percolating water necessary for some useful purpose on his land. (93 C.J.S. *Waters* §93c(3) (1956).) Such a rule raises a host of imponderables, especially since the use is limited to the land itself. Under it, it would be doubtful if a landowner could drain a sink hole or fen since the water would not be used on the premises. (Compare *Behrens*.) In the instant case, presumably the action by the City is taken to benefit all the inhabitants of Pontiac. How is this to be weighed reasonably against the single well on plaintiff's premises? Moreover, the record here discloses that the water from plaintiff's well was used for purposes incidental to a trucking business which was largely conducted off the premises. How does this square with the reasonable use requirement that the water be used on and for the premises? It appears to us that the reasonable use rule does nothing more than add a wild card to the English rule.

The correlative rights rule is even more difficult of application. The Missouri Court of Appeals, while finally adopting the reasonable use rule, said concerning the correlative rights rule:

> "California remains the only important correlative rights state; Utah has abandoned it, and only Nebraska also applies it to some extent. The administration of such a system of rights has proved extremely difficult in times of water shortage and has tendered towards an 'equalitarian rigidity' which does not take into account the relative value of the competing uses." *Higday v. Nickolaus* (Mo. App. 1971), 469 S.W.2d 859, 867.

In summary, we find nothing which indicates that Illinois has, or should, deviate from the English rule laid down in *Edwards*. For this

reason, the order of dismissal by the circuit court of Livingston County is affirmed.

Affirmed.

TRAPP, P. J., and LONDRIGAN, J., concur.