ELEANOR J. BRIDGMAN, Plaintiff-Appellant, v. THE SANITARY DISTRICT OF DECATUR *et al.*, Defendants-Appellees (Wiegand & Storrer, Inc., Defendant).

Fourth District   No. 4—87—0316

Opinion filed December 17, 1987.

Brinkoetter & Barnes, P.C., of Decatur, for appellant.

Hull, Campbell & Robinson, of Decatur, for appellee Bainbridge, Gee, Milanski & Associates, Inc.

Edward Booth, of Greanias & Booth, of Decatur, for appellee Sanitary District of Decatur.

JUSTICE SPITZ delivered the opinion of the court:

The present case was initiated by the plaintiff acting *pro se*. She filed a one-count complaint alleging damages against five separate defendants. Each of the defendants filed a motion to dismiss the initial complaint and subsequently plaintiff retained counsel. The mo-

tions to dismiss were allowed and two defendants were omitted from further proceedings.

Plaintiff subsequently filed her first-amended complaint in the present cause, and this complaint was framed in four separate counts. The first count pertained to the Sanitary District of Decatur (sanitary district). Plaintiff alleged in count I of her first-amended complaint that she was the owner of 2375 Mesa Drive in Decatur, Illinois, where she maintained her personal residence. She alleged that her water was supplied by a well located on the premises, that this well was supplied by subsurface waters consisting of the water table below her property, and that this water was used for drinking, bathing, washing, and other domestic needs. The complaint further alleged that the Decatur sanitary district constructed a ditch on the property which adjoined her property and that this ditch caused her property to be completely dewatered. It alleged that the Decatur sanitary district used a granular fill within the ditch and that the granular fill caused water to be removed from her premises and diverted so as to cause a waste of subsurface water and interfere with her right to have reasonable use of the subsurface water for domestic purposes. The complaint further alleged that the removal of the subsurface water caused her well to become contaminated with the impurities from other sources and the plaintiff was thereafter unable to obtain sufficient water by digging a deeper well. She alleged that as a result of the removal of her source of water that her property had been devalued and that she had been deprived of any available source of water for use for her domestic needs.

Count II of the amended complaint, directed at Bainbridge, Gee, Milanski and Associates, Inc. (Bainbridge), alleged that the Decatur sanitary district had employed Bainbridge to design the specifications, plans, and designs and that the specifications, plans, and designs called for the use of a granular fill. Plaintiff alleged in count II that the use of the granular fill in the plans and specifications was a negligent design and that as a result of this negligence the subsurface water was permanently removed from the plaintiff's land and that she was therefore without any water source and her property value was reduced.

Count III and count IV were both directed against Wiegand and Storrer, Inc. (Wiegand). Count III alleged that Wiegand was employed by the Decatur sanitary district as a contractor for the purpose of constructing the sanitary sewer and that Wiegand knew or should have known that the construction of the sewer in accordance with the plans and specifications would permanently dewater plaintiff's land

and alter the water table that existed. The complaint further alleged that Wiegand negligently failed to act on its knowledge or imputed knowledge to take steps to prevent damage to plaintiff's well and water table when it should have known that a modification of the plans was necessary to prevent the injury complained of. The complaint further alleged in count III that the diversion of the subsurface waters deprive the plaintiff of her right to have reasonable use of her subsurface water for domestic purposes. . .

Count IV alleged in addition to the previous matters that Wiegand had failed to restore the land to its original surface dimensions and provide adequate drainage for surface water. The complaint alleged that as a result of the failure to restore the land to its original dimensions that the surface water now collects and stands on the plaintiff's land to her damage. As a result of the standing water on the plaintiff's land, plaintiff's property is alleged to have been substantially diminished in value.

Defendant Decatur sanitary district filed a motion to dismiss count I of the complaint alleging three reasons for granting the motion. The first reason was that section 3—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—103) barred the plaintiff from any action against the Decatur sanitary district. The second basis for the motion was that the complaint lacked any allegation of notice as required by section 8—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 8—102). It alleged that since no notice was given the civil action was barred. The third reason alleged in the motion to dismiss was that the law of Illinois prohibits the plaintiff from bringing a cause of action for interference with subsurface waters.

Defendant Bainbridge filed a motion for judgment on the pleadings. The motion for judgment on the pleadings alleged that count II should be dismissed since no cause of action lies for interference with subsurface waters under Illinois law.

Defendant Wiegand filed a motion for judgment on the pleadings and to strike and dismiss. Three reasons were stated in the motion for dismissal of count III. The first reason was that an independent contractor owes no duty to third persons to judge the plans, specifications, or instructions which he is merely contracted to follow. The second reason cited for dismissal of count III was that the plaintiff has no remedy under Illinois law for a diversion of subsurface waters. The third reason cited was that the plaintiff cannot recover damages for the injuries alleged to have been sustained in count III, those being

the costs of obtaining alternative water, the lack of availability of an alternate water supply, and the diminution of value to plaintiff's real estate.

Wiegand addressed count IV in its motion to dismiss and repeated the contention that a contractor cannot be sued where it follows the specifications given by the owner, and that the economic loss is not recoverable under a negligence theory. In addition, defendant Wiegand alleged it had no duty to the plaintiff to avoid diversion of the natural flow of water and that any cause of action, if it existed, would lie against the owner of the land upon which the cause of the diversion rests.

The court heard arguments on the motions and as to each motion, the court granted the relief prayed and dismissed the plaintiff's cause of action with prejudice against each defendant.

Plaintiff filed a timely notice of appeal. The present appeal addresses the propriety of the court's dismissal of all counts of plaintiff's complaint with prejudice.

The resolution of this appeal first requires an interpretation of certain provisions of the Water Use Act of 1983 (Act). (Ill. Rev. Stat. 1985, ch. 5, par. 1601 *et seq.*) No reported Illinois decisions have heretofore interpreted any of the provisions of this Act. Plaintiff concedes that prior to the effective date of the Act, no cause of action was available in Illinois for interference with subsurface water, because Illinois followed the "absolute ownership" doctrine, pursuant to which subsurface water was considered part of the land itself and belonged absolutely to the owner of the land. (See *Edwards v. Haeger* (1899), 180 Ill. 99, 54 N.E. 176; *Lee v. City of Pontiac* (1981), 99 Ill. App. 3d 982, 426 N.E.2d 300.) Plaintiff contends that the Act significantly modified Illinois law by rejecting the "absolute ownership" doctrine and replacing it with a "reasonable use" doctrine which is based upon the riparian doctrine followed in Illinois with regard to surface water.

The provisions of the Act which support plaintiff's position are sections 3, 4, and 6. Section 3 provides in part:

> "The general purpose and intent of this Act is to establish a means of reviewing potential water conflicts before damage to any person is incurred and to establish a rule for mitigating water shortage conflicts by:
>
> \*\*\*
>
> (b) Establishing a 'reasonable use' rule for groundwater withdrawals." (Ill. Rev. Stat. 1985, ch. 5, par. 1603(b).)

Section 4 provides in pertinent part:

> "As used in this Act, unless the context otherwise requires

\*\*\*

(b) 'Groundwater' means percolating water found below the surface of the earth.

\* \* \*

(f) 'Reasonable use' means the use of water to meet natural wants and a fair share for artificial wants. It does not include water used wastefully or maliciously." (Ill. Rev. Stat. 1985, ch. 5, par. 1604(b), (f).)

Section 6 provides:

"The rule of 'reasonable use' shall apply to groundwater withdrawals in the State." Ill. Rev. Stat. 1985, ch. 5, par. 1606.

We note that the definition of reasonable use, as contained in section 4(f) of the Act, incorporates the language used in *Evans v. Merriweather* (1842), 4 Ill. 492, wherein the doctrine of reasonable use as it applies to surface water was set forth.

In *Merriweather*, the Illinois Supreme Court stated the law regarding riparian water rights as follows:

"Each riparian proprietor is bound to make such a use of running water, as to do as little injury to those below him, as is consistent with a valuable benefit to himself. The use must be a reasonable one. Now the question fairly arises, is that a reasonable use of running water by the upper proprietor, by which the fluid itself is entirely consumed? To answer this question satisfactorily, it is proper to consider the wants of man in regard to the element of water. These wants are either natural or artificial. Natural are such as are absolutely necessary to be supplied, in order to his existence. Artificial, such only, as by supplying them, his comfort and prosperity are increased. To quench thirst, and for household purposes, water is absolutely indispensable. In civilized life, water for cattle is also necessary. These wants must be supplied, or both man and beast will perish.

The supply of man's artificial wants is not essential to his existence; it is not indispensable; he could live if water was not employed in irrigating lands, or in propelling his machinery. In countries differently situated from ours, with a hot and arid climate, water doubtless is absolutely indispensable to the cultivation of the soil, and in them, water for irrigation would be a natural want. Here it might increase the products of the soil, but it is by no means essential, and cannot therefore be considered a natural want of man. So of manufactures, they promote the prosperity and comfort of mankind, but cannot be consid-

ered absolutely necessary to his existence; nor need the machinery which he employs be set in motion by steam.

From these premises would result this conclusion; that an individual owning a spring on his land, from which water flows in a current through his neighbor's land, would have the right to use the whole of it, if necessary to satisfy his natural wants. He may consume all the water for his domestic purposes, including water for his stock. If he desires to use it for irrigation or manufactures, and there be a lower proprietor to whom its use is essential to supply his natural wants, or for his stock, he must use the water so as to leave enough for such lower proprietor. Where the stream is small, and does not supply water more than sufficient to answer the natural wants of the different proprietors living on it, none of the proprietors can use the water for either irrigation or manufactures. So far then as natural wants are concerned, there is no difficulty in furnishing a rule by which riparian proprietors may use flowing water to supply such natural wants. Each proprietor in his turn may, if necessary, consume all the water for these purposes. But where the water is not wanted to supply natural wants, and there is not sufficient for each proprietor living on the stream, to carry on his manufacturing purposes, how shall the water be divided? We have seen that without a contract or grant, neither has a right to use all the water; all have a right to participate in its benefits. Where all have a right to participate in a common benefit, and none can have an exclusive enjoyment, no rule, from the very nature of the case, can be laid down, as to how much each may use without infringing upon the rights of others. In such cases, the question must be left to the judgment of the jury, whether the party complained of has used, under all the circumstances, more than his just proportion." 4 Ill. at 495-96.

By using the terms "natural wants" and "artificial wants" in the definition of reasonable use in the Act (Ill. Rev. Stat. 1985, ch. 5, par. 1604(f)), the legislature has adopted the same standards for groundwater withdrawals as that which applies to surface water withdrawals pursuant to *Merriweather*. As at least two commentators on Illinois groundwater law have stated, the Act has brought Illinois under a unique, unified doctrine of common law which covers the development and use of both surface and groundwater resources, and this doctrine is based upon the riparian doctrine of reasonable use which is centered upon the opinion of the Illinois Supreme Court in *Merriweather*.

See, *e.g.*, F. Mann, H. Ellis, & N. Krausz, *Water-Use Law in Illinois* 703 (U. Ill. Agricultural Experiment Station Bulletin, in cooperation with Economic Research Service, U.S. Department of Agriculture, 1964); G. Clark, *Illinois Groundwater Law the Rule of "Reasonable Use"* (State of Illinois, Department of Transportation, Division of Water Resources, prepared for presentation to the Illinois Groundwater Association, semi-annual meeting, Illinois Department of Transportation, 1985).

Defendants, the sanitary district and Bainbridge, contend that the Act does not change the law in Illinois regarding groundwater withdrawals. They base this argument upon the first clause of the following statement which is contained in section 3 of the Act:

> "This Act shall not be construed to regulate or restrict groundwater withdrawals and the requirements of Section 5 of this Act shall not apply to the region governed by the provisions of 'An Act in relation to the regulation and maintenance of the levels in Lake Michigan and to the Diversion and apportionment of water from the Lake Michigan watershed', approved June 18, 1929, as amended." Ill. Rev. Stat. 1985, ch. 5, par. 1603.

■■ ■ We simply do not agree with defendants' interpretation of the foregoing provision. As defendant, the sanitary district, asserts in its appellate brief, statutes are to be construed, if possible, so that no word, clause, or sentence is rendered meaningless or superfluous. (*People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171, 174.) Defendants' interpretation of the foregoing provision would render sections 3(b) and 6 of the Act meaningless. (Ill. Rev. Stat. 1985, ch. 5, pars. 1603(b), 1606.) These provisions clearly state that the rule of reasonableness shall apply to groundwater withdrawals, thereby supplanting the rule of absolute ownership of groundwater. Rather, we conclude that the foregoing provision, and specifically the first clause of that provision, relied upon by the defendants, applies only to the Lake Michigan watershed area and is totally inapplicable to the instant case.

■ In light of our conclusion that the Act represents a significant change in groundwater law in Illinois, we now turn our attention to the issue of whether the court erred by dismissing all counts of plaintiff's complaint with prejudice. When considering a motion to dismiss, a court is obligated to accept as true all well-pleaded facts and all reasonable inferences which could be drawn from those facts. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390 N.E.2d 72, 77.) Pursuant to section 2—612(b) of the Code of Civil Procedure (Code) (Ill.

Rev. Stat. 1985, ch. 110, par. 2—612(b)), "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Pursuant to section 2—603(c) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c)), "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." Furthermore, as this court stated in *Champaign National Bank v. Illinois Power Co.* (1984), 125 Ill. App. 3d 424, 428-29, 465 N.E.2d 1016, 1019, "[i]f the facts alleged and any reasonable inferences capable of being drawn from those facts demonstrate a possibility of recovery, the pleading is not subject to dismissal." Consequently, our focus on review is whether any of the counts of plaintiff's complaint "demonstrate a possibility of recovery."

Count I of plaintiff's first-amended complaint alleged that the Decatur sanitary district constructed a ditch adjacent to her property which caused her property to be completely dewatered, that this ditch caused a waste of subsurface water, that she could not obtain water for her domestic needs from her property, and that the actions of the sanitary district devalued her property. We are of the opinion that the foregoing facts alleged and the reasonable inferences capable of being drawn from those facts demonstrate a possibility of recovery pursuant to the provisions of the Act. Although substantial and difficult questions are raised concerning the Act as it applies to count I of plaintiff's complaint, these questions cannot be avoided by dismissing plaintiff's complaint. One of the questions which must be answered is whether the sanitary district's use of the subsurface water is for "natural wants" or "artificial wants," and whether this use constitutes waste. The question of whether the use of water for a sanitary sewer constitutes a "natural want" or an "artificial want" was not specifically addressed in *Merriweather*, or any other reported Illinois decision, and based upon the evidence in the record, we cannot conclude as a matter of law which category the use of water in the instant case falls into.

Plaintiff also alleges in count I of her complaint that the actions of the sanitary district have contaminated her well with impurities. Pursuant to section 2—603(b) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(b)), this allegation should have been contained in a separate count. Nevertheless, dismissal with prejudice was not the appropriate remedy under these circumstances, because this minor defect would have been easily remedied. See *Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 390 N.E.2d 72; *Champaign National Bank v. Illinois Power Co.* (1984), 125 Ill. App. 3d 424, 465 N.E.2d 1016; Ill.

Rev. Stat. 1985, ch. 110, par. 2—612(b). '

The portion of count I of plaintiff's complaint alleging that the actions of the sanitary district contaminated her well clearly states a cause of action. (*Van Brocklin v. Gudema* (1964), 50 Ill. App. 2d 20, 199 N.E.2d 457.) The sanitary district presents no authority or argument to the contrary. Therefore, the trial court erred by dismissing this portion of defendant's complaint with prejudice, although we note that the two causes of action contained in count I of plaintiff's first-amended complaint should be split into two separate counts.

■ We also agree with plaintiff's argument that the trial court's dismissal of count I of her complaint cannot properly be supported by reliance upon section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—103(a)), which provides, in pertinent part:

"A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe."

Plaintiff relies upon *Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074, 443 N.E.2d 737, in support of her argument that the foregoing provision does not apply to such damages as those claimed by her in the present case. In *Starcevich*, the plaintiff sought to recover damages from the city of Farmington, which had altered the natural flow of surface waters in such a way that his driveway was washed out on two occasions. The city had assisted with the cost of his repairs on the first occasion but on the second occasion, refused to do so. He sought damages in the amount of $4,200 for the repair of his driveway. The city of Farmington raised the same immunity relied upon by the Decatur sanitary district. The appellate court ruled that it did not appear that there was a sufficient basis for raising such immunity, stating:

"Although the defendant city alluded generally to statutory immunities in its motion to dismiss, it does not appear to us that a sufficient basis for raising such immunities exists. Specifically, we do not believe that the crux of plaintiff's complaint is

defendant's failure to inspect property (Ill. Rev. Stat. 1979, ch. 85, par. 2—105), or adoption of a design approved by a body exercising discretionary authority to give such approval (Ill. Rev. Stat. 1979, ch. 85, par. 3—103). Nor do we find a factual basis to establish nonliability of any of the defendant city's employees (Ill. Rev. Stat. 1979, ch. 85, par. 2—109) or that a public employee was serving in a position involving the determination of policy or exercise of discretion and as a result of such employee's act plaintiff suffered the injury complained of (Ill. Rev. Stat. 1979, ch. 85, par. 2—201). On the face of the pleadings, we cannot therefore determine that the defendant city will necessarily prevail on the statutory defenses." *Starcevich,* 110 Ill. App. 3d at 1080-81, 443 N.E.2d at 815.

As plaintiff points out, the instant case was decided solely upon the pleadings which had been filed by plaintiff. No answer or affirmative matter has been filed or included in this record by the Decatur sanitary district. Furthermore, no affidavit or affirmation of fact is contained in the record which would give rise to any defense under section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act. (Ill. Rev. Stat. 1985, ch. 85, par. 3—103(a).) There is not even an allegation in the common law record that the design or plan for the sewer project was approved in advance of the construction by a legislative body. The sanitary district does not even address the issue of governmental immunity in its brief. Thus, for the foregoing reasons, we conclude that the dismissal of count I of plaintiff's complaint was improper.

■ We next turn our attention to the propriety of the dismissal of count II of plaintiff's first-amended complaint, which was directed at defendant Bainbridge. This count alleges that Bainbridge was employed to design the plans for the sewer project, that these plans called for the use of granular fill, that the use of granular fill in the plans and specifications was a negligent design, and that as a result of this negligent design, the undersurface water was permanently removed from plaintiff's land and that the value of her property was reduced. Plaintiff relies upon *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 403 N.E.2d 1325, in support of her argument that a plaintiff may sue a designer of a public improvement for negligent preparations of plans and specifications. Defendant Bainbridge does not dispute this argument in its brief. Rather, it relies solely upon an allegation made in its motion to dismiss that the use of granular fill is a common construction practice and was not negligent. This appears to this court to raise a question of fact which

cannot be disposed of by a motion to dismiss. Certainly, the dismissal of count II of the complaint with prejudice for the reason argued by defendant Bainbridge was improper, because it cannot be determined as a matter of law that count II does not demonstrate a possibility of recovery.

Plaintiff raises no argument in her brief regarding the propriety of the dismissal of counts III and IV of her complaint, which were addressed against defendant Wiegand. Therefore, we do not address the propriety of the dismissal of these counts.

For the reasons stated herein, the portion of the order of the circuit court dismissing counts I and II of plaintiff's complaint with prejudice is hereby reversed and remanded, and the portion of the circuit court's order dismissing counts III and IV of plaintiff's complaint with prejudice is hereby affirmed.

Affirmed in part; reversed in part and remanded.

GREEN, P.J., and KNECHT, J., concur.