(No. 22165.—

OLLIE TRAYLOR *et al.* Appellants, *vs.* MAE PARKINSON *et al.* Appellees.

*Opinion filed February 23, 1934.*

HODGES & TRAGETHON, for appellants.

GRAHAM & GRAHAM, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Ollie Traylor, Alva E. Traylor, A. H. Krause, E. H. Krause and Anna Howard filed their bill of complaint against Mae Parkinson and Fred Parkinson in the circuit court of Sangamon county to enjoin them from obstructing a certain driveway. An answer, replication, and a stipulation of facts were filed. The cause was heard upon the pleadings and the stipulation, and a decree was rendered denying the application for a permanent injunction and dismissing the bill for the want of equity. From that decree, four of the complainants, Ollie Traylor, Alva E. Traylor, A. H. Krause, and E. H. Krause, prosecute this appeal.

On August 3, 1908, Charles G. Wineteer acquired title by warranty deed to lots 14 and 15, in block 2, of Alexander Starne's addition to the city of Springfield. Together these lots constituted a parcel of land, eighty feet, one and one-half inches wide, facing north on Williams street and extending south along the east line of Walnut street, one hundred sixty-eight feet to an unpaved public alley. Wineteer caused to be made a survey and plat by which he divided the parcel into four lots, each having a frontage of forty-two feet on Walnut street and a depth, from the east line of that street, of eighty feet, one and one-half inches. The plat was filed in the office of the county recorder. Wineteer built four one family residences, one on each of the lots of the re-subdivision. A coal room at the rear extends the full width of each house from north to south. Wineteer also erected a brick coping along the east boundary of the parcel and built a concrete driveway eight feet wide through the center of the east half of the re-subdivision. The driveway extends from Williams street on the north to the public alley on the south, and its east line is approximately sixteen feet west of and parallel to the east or rear line of the four lots.

On September 1, 1909, Wineteer and his wife, by a warranty deed, conveyed the north lot to Herbert D. Winchell, and subsequently the appellees acquired the title thereto. Wineteer, on October 23, 1912, conveyed the south lot to Mordecai Carper. Anna Howard later became the owner of this lot. On January 29, 1914, Wineteer conveyed the second and third, namely, the two center lots to R. E. Persinger. Of these two lots, Ollie Traylor thereafter acquired the title to the second and A. H. Krause and E. H. Krause to the third. All the foregoing conveyances were made without reservations or conditions.

The distances between certain house lines and lot lines are approximately as follows: From the south line of the appellees' house to the south line of their lot, eleven feet; from the north line of the appellant Traylor's house to the line dividing his lot from the lot of the appellees, seven feet; from the south line of Traylor's house to the south line of his lot, nine feet; from the north line of the house belonging to the appellants, A. H. and E. H. Krause, to the line dividing the second and third lots, nine feet; from the south line of that house to the south line of the third lot, seven feet, and from the north line of Anna Howard's house to the line dividing the third and south lots, eleven feet.

The driveway was used by the successive occupants of the houses and other parties, including the city of Springfield, until September 20, 1932, when the appellees started to move their garage upon a portion of the driveway located on their lot. The appellees had notified the appellants of their intention to obstruct the driveway but had failed to obtain their permission. Garages had been built upon three of the lots between the driveway and the coping. The effect of obstructing the driveway as the appellees purposed was to deny the appellants and Anna Howard ingress to and egress from Williams street. The driveway did not

enter any street or public alley from the rear of the appellants' premises.

The sole contention of the appellants is that the lot owned by the appellees is subject to an implied easement in favor of the owners of other lots in the re-subdivision. An easement appurtenant or appendant runs with the land and may be transferred. An easement in gross is personal and non-transferable. (*Messenger* v. *Ritz*, 345 Ill. 433; *Kuecken* v. *Voltz*, 110 id. 264; *Garrison* v. *Rudd*, 19 id. 558). An easement creates an interest in land and must be founded on a deed or other writing, or on prescription which presumes a previous grant. (*Boland* v. *Walters*, 346 Ill. 184; *Weber* v. *Aluminum Ore Co.* 304 id. 273; *Morse* v. *Lorenz*, 262 id. 115; *Forbes* v. *Balenseifer*, 74 id. 183). Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; first, that there be a separation of the title; second, that, before the separation takes place, the use, which gives rise to the easement, shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent, and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. (Jones on Easement, p. 121; 1 Thompson on Real Property, p. 470; *Fossum* v. *Stark*, 302 Ill. 99; *Clarke* v. *Gaffeney*, 116 id. 362; *Ingals* v. *Plamondon*, 75 id. 118). The burden of proof rests upon the claimant to show the existence of the facts necessary to create an easement by implication. *Bontz* v. *Stear*, 285 Ill. 599; *Gilfoy* v. *Randall*, 274 id. 128.

These requirements are not disputed. The appellants, however, to support their contention that as subsequent grantees of the common owner they have an easement in the driveway across the part of the latter's estate that was first severed rely upon several cases. Of these, it appeared in *Martin* v. *Murphy*, 221 Ill. 632, that Lucy E. Briggs

owned lots 1, 2, 3 and 4 in a subdivision at the south-west corner of Michigan avenue and Twenty-fifth street in the city of Chicago. The first three lots, numbered progressively from the north, faced Michigan avenue, and lot 4, the east line of which coincided with the west line of the other lots, faced Twenty-fifth street. In 1874, Mrs. Briggs erected two-story and basement brick houses on lots 1, 2 and 3, each house covering the full width of a lot, the three houses together presenting a continuous front. She also erected a brick residence on lot 4 with its east wall on the boundary line between that lot and the other lots. Thereafter the occupants of the houses on lots 2 and 3, and persons dealing with them, passed to and from Twenty-fifth street over the rear or west end of lot 1 to remove ashes and garbage, to deliver fuel and provisions and for other purposes. The only access to Michigan avenue was through the front entrances of the houses. An easement was claimed by subsequent grantees over the west end of lot 1 for the benefit of lots 2 and 3. The passageway was essential to the use of lots 2 and 3 for residential purposes and, obviously, it was necessary to sustain the easement.

The other authorities invoked by the appellants fail to sustain their contention. The roadway or right of way, in *Keen* v. *Bump*, 310 Ill. 218, furnished the only means of ingress and egress from the public highway. The easements claimed in the alleys in both *Gulick* v. *Hamilton*, 287 Ill. 367, and *Hankins* v. *Hendricks*, 247 id. 517, were shown in the chains of title. The proof, in *Cihak* v. *Klekr*, 117 Ill. 643, disclosed that an inducement to the first sale of the property belonging to the common owner was a plat showing the alley in controversy, and that the plat was subsequently recorded with the notation, "reserved for private alley." Similarly, in *Clarke* v. *Gaffeney*, 116 Ill. 362, an announcement was made at a public auction that a particular strip of land had been laid out as a road for

the benefit of the purchasers of the lots, and it furnished the mode of access to a public highway.

The case at bar presents a situation essentially different. Ample space is afforded along a side of each of the appellants' houses and within their respective ownerships for a driveway. Although there have been a number of conveyances of the several lots none appearing of record mentions the existence of the driveway or of an easement for that purpose. The evidence fails to disclose that Winchell, the first grantee of Wineteer, purchased the lot now owned by the appellees subject to an easement for the benefit of one or more of the remaining lots, or that Wineteer, after the conveyance to Winchell, retained such an easement.

The appellees maintain that both in the location and in the construction of the four houses, Wineteer followed a plan which permitted either one driveway from Williams street south across the east half of the four lots, or driveways from Walnut street east along the houses of the appellants. Vacant strips, seven and nine feet wide, to the north and south of Traylor's house and the house of A. H. and E. H. Krause, and within the boundaries of their respective lots, are available for driveways. The accessibility from Walnut street to the rear entrances, the coal rooms, and for general delivery and drayage purposes, was as apparent to Winchell, the first grantee, as the driveway from north to south across the rear of the lots. Wherever available alternatives affording reasonable means of ingress and egress were presented, easements by implication have not been sanctioned. *VanPatten* v. *Loof,* 349 Ill. 483; *Boland* v. *Walters, supra; Simonson* v. *Goldberg,* 338 id. 420; *Fels* v. *Arends,* 328 id. 38; *Weber* v. *Aluminum Co. supra.*

From the record it is manifest that there are vacant spaces along the sides of the appellants' houses sufficient for driveways. It is not contended that the construction

of a substitute for the existing driveway will subject the appellants to unreasonable expense or render their properties less valuable or desirable. The coal rooms may be easily reached by driveways from Walnut street. Such driveways will furnish suitable approaches to any garages which are or may be located on the strip of land between the present driveway and the east coping. The use of that driveway has been permissive and without written authority. Although the exercise of the right or privilege claimed by the appellants has been convenient it has never been reasonably necessary to the proper enjoyment of their respective estates.

The decree of the circuit court is affirmed.

*Decree affirmed.*