CHAMPAIGN NATIONAL BANK, Trustee, Plaintiff-Appellant, *v.* ILLINOIS POWER COMPANY, Defendant-Appellee.

Fourth District  No. 4—83—0290

Opinion filed June 27, 1984.

TRAPP, J., dissenting.

Waaler, Evans & Gordon, of Champaign, for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Jeffrey W. Tock, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff brought this action against defendant in ejectment and in forcible entry and detainer. The trial court found for defendant on all counts of plaintiff's second amended complaint, holding that defendant was an assignee of a valid commercial easement in gross. In the alternative, the court held that recitals in the deeds under which plaintiff took title estopped it from maintaining this action against defendant. The court also granted defendant's request for a declaratory judgment declaring that defendant has a perpetual easement on the subject property.

The defendant and the Illinois Central Railroad entered into an agreement dated January 24, 1955. By the terms of the agreement, the railroad granted the defendant a license to run its power lines and any necessary poles along its right-of-way. The agreement was terminable on 90 days' written notice by the railroad. A new license agreement was entered into by the railroad and defendant on August 31, 1967, to accommodate defendant's new 138 kilovolt lines. The terms of the new agreement were virtually indistinguishable from the previous agreement.

On May 16, 1979, the railroad executed and delivered four quitclaim deeds to plaintiff, who was acting as trustee for trust Nos. 030-626-089 and 030-742-902. Each of the four quitclaim deeds contained the following reservation:

> "Grantor reserves the right for the continued maintenance, replacement and use of all existing conduits, sewers, water mains, gas lines, electric power lines, wires and other utilities and easements on said premises whether or not of record, including the repair, reconstruction and replacement thereof and Grantee agrees not to interfere with the rights herein reserved or any facilities used pursuant thereto."

Defendant and the railroad entered into a "Longitudinal Easement Agreement" on July 28, 1980. The railroad granted defendant a perpetual easement for the purpose of constructing, operating and maintaining its power lines. The agreement specifically included any of defendant's existing facilities installed on the railroad's right-of-way. The easement was to take effect upon approval by the Commerce Commission and payment by defendant of the final installment under the contract.

The Commerce Commission approved the agreement in an order dated October 29, 1980. A check for the final installment was delivered by defendant to the railroad on December 22, 1980. The "Longitudinal Easement Agreement" was recorded on April 27, 1981.

The railroad executed and delivered four additional quitclaim deeds to plaintiff as trustee for the aforementioned land trusts on December 9, 1980. Each of those deeds contained the following two reservations:

> "Grantor reserves for itself, its successors and assigns, an easement for its poleline together with all appurtenant fixtures necessary thereto as now located on, over and across the premises, with all reasonable right of entry for the purpose of constructing, replacing, repairing and maintaining the same, to

have and to hold for as long as required for Grantor's purposes.
***

GRANTOR reserves the right for the continued maintenance, replacement and use of all existing conduits, sewers, water mains, gas lines, electric power lines, wires and other utilities and easements on said premises whether or not of record including the repair, reconstruction and replacement thereof and Grantee agrees not to interfere with the rights herein reserved or any facilities used pursuant thereto."

The real estate which is the subject of the dispute is a strip of land approximately 1,505.53 feet by 75 feet, lying between the Illinois Central Gulf railroad tracks and U.S. Route 45 in the southern portion of the city of Champaign.

Plaintiff, as trustee of the land trusts, filed a two-count complaint on November 10, 1981. Count I was an action for ejectment, and count II was an action in forcible entry and detainer. The complaint was later amended to include four counts, two in ejectment and two in forcible entry and detainer. Defendant answered, denying that plaintiff's interest in the property was paramount to defendant's interest and raised five affirmative defenses. An additional affirmative defense was allowed by leave to amend granted July 9, 1982.

A hearing was held on July 9, 1982, and the trial court took the matter under advisement. On August 12, 1982, the trial court found for the defendant on all counts of plaintiff's complaint and granted defendant's request for declaratory judgment declaring that defendant had a perpetual easement for maintenance and repair of its lines and poles on the subject property. Plaintiff's motion for reconsideration was denied and plaintiff appeals.

Four main issues are presented on appeal: (1) Did the trial court err in considering extrinsic evidence in interpreting the terms of the deed; (2) were defendant's pleadings sufficient to raise the existence of an easement in gross; (3) what interest, if any, was reserved by the railroad in its deeds to plaintiff and was that interest transferable; and (4) does the doctrine of estoppel by deed apply?

Plaintiff contends that the trial court erred in considering extrinsic evidence on the question of the parties' intent and should have considered only the language contained in the deeds themselves.

■ Historically, courts have applied the "four corners" or "plain meaning" rule when attempting to determine the intent of the parties in executing a document. A writing is presumed to speak the intention of the parties who signed it. Extrinsic evidence is not admissible on the question of intent unless the writing is found to be ambiguous.

*Western Illinois Oil Co. v. Thompson* (1962), 26 Ill. 2d 287, 186 N.E.2d 285; *Pfeffer v. Lebanon Land Development Corp.* (1977), 46 Ill. App. 3d 186, 360 N.E.2d 1115.

More recent cases have held, however, that if relevant evidence concerning the circumstances surrounding the execution of a document is offered, it generally should be admitted. (*URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 427 N.E.2d 1295; *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745.) The court said:

> " 'Thus, relevant parol evidence is always admissible to assist in the determination of what the words used in an integrated writing mean; and the parol evidence rule is placed in its proper role of focusing interpretation on the meaning of the terms embodied in the writing and of rendering all evidence inoperative to vary those terms once their meaning has been discovered. Admitting evidence of prior negotiations and agreements for the purpose of discovering the meaning of the terms used in the integration does not violate the parol evidence rule. "Such testimony does not vary or contradict the written words; it determines that which cannot be varied or contradicted." [Citing Corbin on Contracts sec. 579, at 421-422 (1960).]' 437 F.2d 231, 234-35." *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 235, 427 N.E.2d 1295, 1300.

■ In the case at bar, the central dispute between the parties concerns the reservations contained in the quitclaim deeds from the railroad to plaintiff. Defendant contends that the railroad intended to reserve an easement for the continued use and maintenance of defendant's utility poles on the subject property. Plaintiff disagrees with defendant's assessment. We hold that the trial court acted properly in admitting extrinsic evidence regarding the intent of the parties in executing and delivering the deeds in question. *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 427 N.E.2d 1295.

Plaintiff next contends that defendant's pleadings failed to properly raise the theory that an easement in gross was created by the reservations in the deeds and that the trial court had no basis for finding that defendant was possessed of a valid easement in gross.

■ Under section 2—612(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—612(b)), "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Pleadings are to be construed liberally in order to do substantial justice. If the facts alleged and any reasonable infer-

ences capable of being drawn from those facts demonstrate a possibility of recovery, the pleading is not subject to dismissal. *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17, 364 N.E.2d 986.

■ Defendant's first affirmative defense, while not expressly couched in terms of an "easement in gross," informed plaintiff that defendant would seek to defeat plaintiff's claim through reliance on the reservation contained in the quitclaim deeds. Also, plaintiff waived its objection to the sufficiency of the allegations of the existence of an easement in gross by not moving to strike the allegations contained in the affirmative defense or by not requesting a more specific statement. Where a complaint substantially but imperfectly states a cause of action, any defect is waived by answering without objection and proceeding to a trial on the merits, especially if the defect was curable by amendment. *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 382 N.E.2d 453; *County of Winnebago v. Willsey* (1970), 122 Ill. App. 2d 149, 258 N.E.2d 138.

■ By not attacking the pleadings filed by defendant and instead proceeding to trial, plaintiff has waived any objection to the sufficiency of the allegations by which defendant hoped to claim an express easement in gross. If necessary allegations were missing from the affirmative defenses, such defects were curable by amendment before trial. Plaintiff, by not raising the issue in a timely manner, denied defendant the opportunity to seek to amend its pleadings. Plaintiff should not now be heard to complain about the insufficiency of defendant's pleadings.

■ Plaintiff argues that the 1955 and 1967 agreements gave defendant a bare license to enter the railroad's property for the purpose of maintaining defendant's utility lines. Those agreements were revocable after written notice. Revocability by the grantor-licensor distinguishes a license from an easement, which is an irrevocable grant of an interest in land. (*Keck v. Scharf* (1980), 80 Ill. App. 3d 832, 400 N.E.2d 503.) When the railroad executed and delivered the eight quitclaim deeds to plaintiff, it reserved an easement which protected the license it had granted the defendant. In order for the railroad to have reserved an easement for defendant, the reservation must have contained a grant to defendant, *i.e.*, words of conveyance to Illinois Power. (See *DuBois v. Judy* (1920), 291 Ill. 340, 126 N.E. 104.) Plaintiff reaches the conclusion that, following the delivery of the deeds, the railroad possessed an easement allowing it to enter on plaintiff's land for a specified purpose. Since no dominant estate clearly exists, plaintiff maintains that the easement reserved by the railroad was in gross and not an easement appurtenant. *Waller v.*

*Hildebrecht* (1920), 295 Ill. 116, 128 N.E. 807.

Defendant does not disagree with plaintiff's analysis up to that point. Defendant does assert, however, that the easement in gross reserved by the railroad in the quitclaim deeds is transferable. If the easement is not transferable, then defendant has the status of a licensee and plaintiff, as successor to the railroad under the quitclaim deeds, could revoke the license on proper notice to defendant. If the easement is transferable, then defendant's interest in the property is not subject to revocation by plaintiff.

Historically, easements in gross were deemed to be personal to the grantor and were not alienable. (3 R. Powell, Real Property sec. 419 (1952).) In Illinois, many of the cases categorically state that an easement in gross is nontransferable. *Traylor v. Parkinson* (1934), 355 Ill. 476, 189 N.E. 307; *Messenger v. Ritz* (1931), 345 Ill. 433, 178 N.E. 38.

Defendant contends that commercial easements in gross are alienable, but is unable to cite any Illinois case which directly passed on the question. In *Schnabel v. County of Du Page* (1981), 101 Ill. App. 3d 553, 428 N.E.2d 671, the court cited the general rule of nonassignability of easements in gross, but also stated that a railroad may sell its right-of-way to another railroad so long as the grantee uses it for railroad purposes. In *Northern Illinois Gas Co. v. Wienrank* (1965), 66 Ill. App. 2d 60, 213 N.E.2d 411, the gas company obtained an "exclusive easement" for underground gas storage. By its own terms the easement was "perpetual and assignable to other authorized public utilities." The court concluded that an easement for a public utility facility was assignable to another public utility, but cited no authority for that proposition.

*Belusko v. Phillips Petroleum Co.* (S.D. Ill. 1961), 198 F. Supp. 140, involved a pipeline easement. The Federal court rejected plaintiff's argument that the easement was nonassignable given the language of the contract and "a common sense recognition" that the rule of nonassignability has no place when commercial utility and railroad easements were at issue.

The commentators agree that an exception to the general rule of nonassignability should be recognized when the easement is a commercial easement in gross. Dean John Cribbet, in his book Principles of the Law of Property, writes:

> "Since certainty is one objective of property law, the simplest rule is to ban all transfers of easements in gross. However, certainty has a way of conflicting with social utility at times and the merit of the English rule becomes questionable if *B* is a

railroad company, a public utility, etc., rather than a private person. Why shouldn't such vast commercial easements in gross be transferable like any other interest in land? American courts saw no reason to deny alienability generally and, while results have not always been consistent, they have made a case-by-case approach to the problem with satisfactory results. Most commercial easements in gross are readily assignable; ***." (J. Cribbet, Principles of the Law of Property, 342 (2d ed. 1975).)

Easements in gross for railroads or for public utility purposes have been uniformly held to be alienable by modern American courts. (3 R. Powell, Real Property sec. 419 (1952).) The writers of the Restatement flatly state that commercial easements in gross are freely alienable. Restatement of Property sec. 489 (1944).

The weight of modern authority supports the position that commercial easements in gross are alienable, especially when the easements are for utility purposes. Therefore, we hold that the easement in gross reserved by the railroad in its quitclaim deeds to plaintiff was capable of being transferred.

■ Plaintiff also attacks the authorization granted by the Commerce Commission to the railroad to transfer a perpetual easement to defendant for utility purposes. Plaintiff maintains that the railroad and defendant fraudulently represented to the Commission that the railroad owned the land in question and that this fraud makes the easement agreement void *ab initio*.

The property covered by the "Longitudinal Easement Agreement" is the same property on which defendant has a license under the 1955 and 1967 agreements. The "Longitudinal Easement Agreement" also corresponds to the reservations in the deeds from the railroad to plaintiff. While the railroad did not own the entire fee underlying the easement at the time of the Commerce Commission hearing, that fact is not relevant to this case. The railroad did own a valid commercial easement in gross derived from the reservations in the deeds. The Commerce Commission approved the transfer as being in the public interest. Plaintiff's claim of misrepresentation is not sufficient to void an otherwise valid transaction between the railroad and the defendant.

Given our holding with respect to the alienability of the railroad's easement in gross, we need not reach the question of whether defendant should prevail under the doctrine of estoppel by deed. Therefore, we decline to decide whether the trial court erred in ruling that plaintiff was estopped from maintaining this action against the defendant.

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

GREEN, J., concurs.

JUSTICE TRAPP, dissenting:

I dissent from the opinion insofar as it finds that the railroad reserved an easement in favor of the defendants in the four quitclaim deeds delivered to plaintiff in May 1979. At that time defendant did not have an easement for its power line upon the railroad right-of-way, but at the most, a license which in essence was revocable at will. No easement from the railroad in favor of the defendant purports to have been created until July 28, 1980.

If a grantor has actually created an easement in favor of another, his subsequent conveyance to another is declared subject to the easement so granted. Neither the railroad nor the defendant can equitably be permitted to transmogrify a revocable license into a perpetual easement by private transactions more than a year after the conveyances to the plaintiff.

An attempt to construe the quitclaim deeds as reserving an easement in the railroad cannot meet scrutiny. There was no purported easement granted to defendant until July 1980. Until the latter date, defendant could only claim a revocable license as against the railroad.