CYNTHIA REYNOLDS, Plaintiff-Appellant, v. MENNONITE HOSPITAL, Defendant-Appellee.—FRANCIS SQUIRES, Plaintiff-Appellant, v. BROKAW HOSPITAL, Defendant-Appellee.—SHARON CHRISMAN, Plaintiff-Appellant, v. MENNONITE HOSPITAL, Defendant-Appellee.—SARA KIRKSEY, Plaintiff-Appellant, v. MENNONITE HOSPITAL, Defendant-Appellee.—SHARON D. DEWEESE, Plaintiff-Appellant, v. MENNONITE HOSPITAL, Defendant-Appellee.—DIXIE L. KELLER, Plaintiff-Appellant, v. MENNONITE HOSPITAL, Defendant-Appellee.

Fourth District Nos. 4—87—0793 through 4—87—0798 cons.

Opinion filed April 21, 1988.

Jeffrey B. Rock, of Harvey & Stuckel, Chartered, of Peoria, for appellants.

Peter W. Brandt, Susan H. Brandt, and Christopher L. Nyweide, all of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellees.

JUSTICE LUND delivered the opinion of the court:

These six plaintiffs filed complaints alleging medical malpractice, and the causes have been consolidated as the issues are identical and the facts almost so. Plaintiffs filed lawsuits in McLean County against certain surgeons for damages caused by allegedly unnecessary surgery. The lawsuits also named as defendants the hospitals at which the surgeries were performed. The hospitals filed motions for summary judgment. The circuit court of McLean County granted the motions in these six cases and made a finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) that no just reason existed to delay enforcement or appeal. Plaintiffs timely filed their notices of appeal.

The pertinent facts are simple. Plaintiffs went to the defendant surgeons for treatment of injuries and recurring pain. The surgeons in each case diagnosed thoracic outlet syndrome and performed rib resection surgery in the defendant hospitals. Plaintiffs allege in their

complaints that the diagnoses were improper, and the surgeries were unnecessary. Further, plaintiffs allege the unnecessary surgeries aggravated the treatment and correction of the true injuries. There is no allegation that the performance of the actual surgeries was negligent. It is simply that the injuries were misdiagnosed, and competent, but unnecessary, surgery was performed.

As to the hospitals, plaintiffs allege these defendants failed to "review and supervise the work of those physicians holding staff privileges within the hospital[s] to insure their competency to diagnose, treat, and perform surgery so that unnecessary surgery would not be performed." Five of the six causes consolidated in this appeal involve surgeries performed at Mennonite Hospital. Plaintiffs state that Mennonite Hospital's department of surgery's rules and regulations allow for unlimited and undefined surgical privileges. As such, the rules and regulations are not in conformity with the Standards of the Joint Commission on Accreditation of Hospitals. As a result of the overly broad privileges, plaintiffs allege the surgeons were allowed to perform surgical procedures for which they had not demonstrated their competence. In addition, plaintiffs allege the surgeons' performance was not subject to periodic evaluation. The sixth cause (No. 83L269) is brought against Brokaw Hospital. Plaintiff in that case alleges the hospital failed to follow its medical staff bylaws requiring ongoing evaluations of the performance of the surgeons. In addition, plaintiff alleges the credentials committee at Brokaw Hospital lacked proper criteria for judging the credentials of surgeon-applicants.

Plaintiffs provided the affidavit of Dr. Arthur Kaufman. Dr. Kaufman was employed in an administrative capacity with the Federal government. He designs and reviews hospital quality control programs. In his affidavit, he stated that the hospitals' failure to conform to acceptable standards of certification and evaluation of surgeons was a cause of plaintiffs' unnecessary surgeries. Kaufman implies that had the hospitals followed proper review procedures, it is probable the surgeons would not have been allowed to perform the unnecessary surgeries. We should clarify that the hospitals were not alleged to be put on notice of any flaw in the background of the surgeons. The court noted this distinction when it stated:

> "The record fails to disclose any facts to demonstrate that there were circumstances existing prior to this Plaintiff's surgery that would have caused the Defendant hospital to limit or revoke the physician's privileges to operate."

This finding was made in each case. The allegations of negligence against the hospitals are based on negligent acts performed against

these plaintiffs, and there are no allegations relating to prior acts of negligence.

The issue on appeal is whether the alleged breach of the duty on the part of the hospitals to review and supervise the work of the physicians with surgical privileges may be a legal cause of the defendant surgeons' misdiagnoses and resulting unnecessary surgeries where no other facts are alleged to indicate the hospitals should have been on notice of possible malpractice. If more facts are required, summary judgment was proper.

■ We begin by first noting the familiar standard for summary judgment. Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact, and that the movant is entitled to judgment as a matter of law. (*Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 33, 437 N.E.2d 22, 25.) It is well established that summary judgment is appropriate in medical malpractice cases where there is no genuine issue as to any material fact and the party seeking summary judgment is entitled to judgment as a matter of law. (*Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 36, 496 N.E.2d 281, 286.) In this case, the trial court determined as a matter of law the actions of the hospitals could not be a proximate cause of plaintiff's injuries.

■ There are two theories of liability for recovery against a hospital in a medical malpractice case: (1) the hospital may be liable based upon a principal-agency relationship between the hospital and physician; and (2) the hospital may owe a duty independent of any relationship between physician and patient to review and supervise the medical care administered to a patient. *Beals*, 146 Ill. App. 3d at 41, 496 N.E.2d at 289; *Ingram v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 456, 458, 438 N.E.2d 1194, 1196.

■ ■ In the present cases, plaintiffs do not allege a principal-agency relationship but premise liability based on an independent duty of the hospitals. Plaintiffs allege the hospitals failed to implement and/or follow standards of review which would insure the competency of the surgeons to diagnose thoracic outlet syndrome. It is true that a hospital has a duty to know the qualifications and the standard of performance of the physicians who practice on its premises. To permit a physician on its staff who the hospital knows or should have known is unqualified or negligent is a breach of the hospital's duty of due care to its patients. *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 739, 435 N.E.2d 877, 881.

However, the alleged facts in these cases do not put them within

the hospitals' scope of liability. A hospital is not an insurer of a patient's safety. It owes him a duty of protection, and it must exercise a degree of reasonable care towards him as his known condition requires. (*Pickle*, 106 Ill. App. 3d at 739, 435 N.E.2d at 881; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 716, 399 N.E.2d 198, 204.) Here, plaintiffs do not allege any facts that would have put the hospitals on notice of possible malpractice on the part of the surgeons. There is nothing in the record to indicate that an evaluation of the surgeons' capabilities would have disclosed substandard practice by the surgeons. Rather, plaintiffs allege the performances of the surgeons were negligent as to their diagnoses of these plaintiffs. As the court in *Pickle* said:

> "We do not recognize the existence of a duty on the part of the hospital's administration to insure that each of its staff physicians will always perform his duty of due care to his patient. [Citation.] *** We agree with the New York Court of Appeals which stated in *Fiorentino v. Wenger* (1967), 19 N.Y.2d 407, 415, 280 N.Y.S.2d 373, 378, 227 N.E.2d 296, 299, that, although a hospital may be held liable for malpractice committed on its premises with its knowledge or under circumstances putting it on notice of the performance of wrongful acts, 'a hospital will not be held liable for an act of malpractice performed by an independently retained healer, unless it had' reason to know the act of malpractice would take place ***.' " (*Pickle*, 106 Ill. App. 3d at 739, 435 N.E.2d at 881-82.)

Under the facts before the trial court, the hospitals had no reason to know of possible misdiagnoses by the defendant surgeons.

The opinion of plaintiffs' expert, Dr. Kaufman, does not supply the facts that are lacking. Dr. Kaufman opined that the hospitals should have known, through proper review procedures, that the surgeons were improperly diagnosing thoracic outlet syndrome. Yet, no facts are alleged in the pleadings or established in the motion proceedings to substantiate that opinion. The absence of review procedures, without more, is insufficient.

 █ Plaintiffs further attempt to create a cause of action against the hospitals by suggesting the hospitals were under a duty to require the surgeons to demonstrate their ability to diagnose thoracic outlet syndrome before the hospitals permitted the physicians surgical privileges to correct such a malady. Even if such a duty exists, it does not create liability on the part of the hospitals under these facts. Generally, the decision to diagnose and treat a patient in a particular manner is a medical question entirely within the treating physician's

discretion, and the negligence of a physician in the treatment of a patient cannot be imputed to the hospital where the physician is not an agent or under the direction of the hospital. (*Johnson*, 79 Ill. App. 3d at 714, 399 N.E.2d at 203; see also *Barton v. Evanston Hospital* (1987), 159 Ill. App. 3d 970, 973, 513 N.E.2d 65, 66-67.) We know of no case where a hospital was found liable for failing to properly review its independent physicians without a showing that the medical institution knew or should have known that the physicians were unqualified prior to the questionable treatment. The extension of liability requested by plaintiffs is not reasonable.

■ In sum, the trial court was correct in finding that a breach of duty by the hospitals could not be a proximate cause of plaintiffs' injuries. Plaintiffs must show the absence of proper review procedures placed the hospitals on notice of possible malpractice on the part of the defendant surgeons. However, simply alleging the failure to comply with certification and review procedures, and that plaintiffs submitted to unnecessary surgery, is insufficient. More is required. While plaintiffs are not required to prove their case on motion for summary judgment, they are required to present some factual basis which would arguably entitle them to judgment in their favor. (*National Loss Control Service Corp. v. Dotti* (1984), 126 Ill. App. 3d 804, 808, 467 N.E.2d 937, 940; *Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 833, 438 N.E.2d 599, 601.) We find plaintiffs failed to meet their burden of proof, and summary judgment was proper.

For the reasons stated above, the orders of the circuit court of McLean County granting summary judgment in these six causes are affirmed.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.