DIMPLE GILBERT, Special Adm'x of the Estate of Jack Gilbert, Deceased, Plaintiff-Appellant, v. IRVING FRANK, Defendant-Appellee (Sycamore Municipal Hospital, Defendant-Appellee).

Second District   No. 2—91—0898

Opinion filed August 28, 1992.

McLAREN, J., dissenting.

Bernard R. Nevoral and David L. Cwik, both of Bernard R. Nevoral & Associates, Ltd., of Chicago, for appellant.

Robert R. McWilliams, of Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford, and Franklin C. Cook, of Freeport, for appellee Sycamore Municipal Hospital.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Dimple Gilbert, acting as special administratrix for the estate of her late husband, Jack, filed an action for medical malpractice and wrongful death against defendants, Sycamore Municipal Hospital (hospital), and Irving Frank, M.D. Dr. Frank, who reached a settlement with plaintiff, is not a party to this appeal. The hospital moved for summary judgment on the basis that it was not vicariously liable for Dr. Frank's alleged negligence because he was not an agent of the hospital. Plaintiff appeals from the order of the circuit court of De Kalb County granting the motion. The issue on appeal is whether summary judgment should have been denied because a material issue of fact existed as to whether the hospital could be held liable under the doctrines of apparent agency or agency by estoppel. We affirm.

The evidence submitted in connection with the hospital's motion for summary judgment established the following facts. Jack Gilbert arrived by ambulance at the hospital's emergency room at about 2:30 p.m. on April 8, 1981. He had experienced chest pains and pain in his left arm while lifting weights that morning. When he arrived at the hospital, Jack asked to be treated by Dr. Stromberg, a member of the hospital's active staff who was not on call that day. Dr. Frank had been asked to cover the emergency room by Dr. Wassner, a surgeon who was on call that day. An emergency room nurse called Dr. Frank at home, and he arrived at the hospital a few minutes later.

After Jack arrived at the emergency room, he signed a form which stated in part as follows:

"The undersigned has been informed of the emergency treatment considered necessary for the patient whose name appears above and that the treatment and procedures will be performed by physicians and employees of the hospital. Authorization is hereby granted for such treatment and procedures."

The hospital prepared the consent form which contained the above statement.

Dr. Frank had Jack undergo several tests including an electrocardiogram or EKG. The tests did not reveal any signs of heart disease or trouble. Dr. Frank ordered some pain medication for Jack and discharged him at 4:20 p.m. Jack died later that evening as a result of a myocardial infarction. An autopsy revealed that Jack was suffering from heart disease at the time of his death.

Marty Losoff was the hospital's administrator at the time of the above events. Losoff testified as follows during his deposition. The hospital was a full-service, acute care facility. Between 14 and 20 physicians, including Dr. Frank, were on the active staff. Active staff physicians were required to be on call in the emergency room when scheduled, although they sometimes arranged for backups to replace them.

Losoff further testified that the emergency room was not operated by an outside contractor; it was considered a function of the hospital. The emergency room nurses were hospital employees, and the hospital owned the equipment in the emergency room. The hospital's emergency room committee reviewed emergency medical treatment rendered by physicians.

According to Losoff, patients in the emergency room would be treated by the physician who was on call unless a patient requested his or her own doctor and that doctor was available. The emergency room physicians had the authority to admit patients to the hospital. The hospital considered them to be independent contractors, however, because they billed the patients separately for their services. The hospital also billed emergency room patients, but not for the physician's services. The hospital did not pay any salary to its active staff physicians. If the hospital administration did not approve of a physician's conduct, a hospital representative would speak to the physician. Losoff acknowledged that the behavior of emergency room physicians could have an impact upon the hospital in a public relations sense. He also stated that he did not believe the hospital ever advised patients that the emergency room physicians were independent contractors.

The hospital submitted an affidavit from Losoff in support of its motion for summary judgment. The affidavit stated that the hospital did not pay Dr. Frank's withholding taxes or provide him insurance, sick leave or vacations. Additionally, Dr. Frank determined his own work schedule and fee rates. According to the affidavit, Dr. Frank was not an agent or employee of the hospital; he was merely granted staff privileges.

In its motion for summary judgment, the hospital contended that it could not be held liable for the alleged negligence of Dr. Frank because he was not an agent or employee of the hospital. Plaintiff argued in her response that potential liability existed under the doctrines of apparent agency and agency by estoppel, thereby precluding entry of summary judgment. The trial court granted the motion, and plaintiff now appeals.

A motion for summary judgment should be granted only if the pleadings, depositions, admissions, and affidavits on file show that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Summary judgment is a drastic means of resolving litigation, and it should be granted only if the movant's right to such relief is free from doubt. *Purtill*, 111 Ill. 2d at 240.

The hospital initially argues that we should not consider the issue raised by plaintiff because count II of her complaint alleges that Dr. Frank was an agent of the hospital rather than an apparent agent or an agent by estoppel. In count II, plaintiff alleged that Dr. Frank treated Jack in the hospital's emergency room on April 8, 1981, and that Dr. Frank was an agent and employee of the hospital at that time. Plaintiff further alleged in count II that Dr. Frank was guilty of several negligent acts or omissions relating to his treatment of Jack and that the hospital was liable for these acts or omissions of its agent and employee.

■ Although in their briefs the parties discuss apparent agency and agency by estoppel separately, the doctrine of apparent agency is based upon the doctrine of equitable estoppel. (*Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278; *Crittendon v. State Oil Co.* (1966), 78 Ill. App. 2d 112, 115.) We therefore agree with the conclusions of the court in *Northern Trust Co.* that these doctrines are based upon the same elements, and there is no practical difference between them. (*Northern Trust Co.*, 168 Ill. App. 3d at 278.) Accordingly, we consider apparent agency and agency by estoppel to be different labels applied to the same doctrine. We shall refer to this doctrine as apparent agency in the remainder of this opinion.

■ Pleadings should be construed liberally in order to achieve substantial justice. (Ill. Rev. Stat. 1989, ch. 110, par. 2—603(c); *Champaign National Bank v. Illinois Power Co.* (1984), 125 Ill. App. 3d 424, 428.) A pleading is not considered to be bad in substance if it reasonably informs the adverse party of the nature of the claim that he or she must meet. (Ill. Rev. Stat. 1989, ch. 110, par. 2—612(b); *Champaign National Bank*, 125 Ill. App. 3d at 428.) Bearing these

principles in mind, we shall consider whether plaintiff's complaint was sufficient to allege apparent agency.

■ An apparent agent is an individual who, whether authorized or not, reasonably appears to third parties to be authorized to act as the agent for another person or entity as a result of the actions of that other person or entity. (*Lang v. Consumers Insurance Service, Inc.* (1991), 222 Ill. App. 3d 226, 232.) An apparent agency is an agency relationship. (See *Lang*, 222 Ill. App. 3d at 232-33.) Therefore we believe plaintiff's allegation that Dr. Frank was the hospital's agent could refer to either an actual or apparent agency.

■ Furthermore, precision pleading should not be required if knowledge of the pertinent facts is within the control of the defendant rather than the plaintiff. (*Holton v. Resurrection Hospital* (1980), 88 Ill. App. 3d 655, 658.) In the case at bar, the hospital would have had knowledge about the nature of its relationship with Dr. Frank, but it is highly unlikely that plaintiff would have had access to this information when she filed her complaint. Therefore we do not believe it is unfair to the hospital to construe the allegation that Dr. Frank was its agent to be an allegation that he was either an actual or apparent agent. We conclude that plaintiff adequately alleged in count II that Dr. Frank was an apparent agent of the hospital and reject the hospital's contrary contention.

On appeal, plaintiff does not challenge the trial court's apparent conclusion in granting summary judgment that the evidence established conclusively that Dr. Frank was not an actual agent of the hospital. Her sole contention is that a genuine issue of material fact existed as to whether Dr. Frank was an apparent agent of the hospital. The hospital argues that the doctrine of apparent agency does not apply to the relationship between a hospital and a physician.

■ In general, there are two theories upon which recovery from a hospital may be based in a medical malpractice action. (*Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 198.) The first is the existence of a principal-agent relationship between the hospital and a negligent physician; the second is the breach of a hospital's duty to supervise and review the medical care administered to a patient. (*Rohe*, 203 Ill. App. 3d at 198.) The second of these theories is not implicated here.

The Appellate Court, Third District, has refused to extend liability to a hospital under the first of the above theories unless the physician was an actual agent of the hospital. (See *Johnson v. Sumner* (1987), 160 Ill. App. 3d 173, 175; *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1016; see also *Heubner v. Galesburg Cottage Hospital* (1991), 215 Ill. App. 3d 129, 133-34.) The Appellate Court, First District, has

held, however, that hospitals are liable for the negligence of physicians who are apparent agents of the hospital. See *Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, 251; *Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278-79; *Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, 278-79.

In support of its holding, the court in *Uhr* stated that, unless the patient has reason to believe that a treating physician in a hospital is an independent contractor, it is natural for the patient in seeking treatment to rely upon the reputation of the hospital. (*Uhr*, 226 Ill. App. 3d at 250.) The court felt that this was especially true in an emergency room context as a patient seldom knows who his or her treating physician will be. (*Uhr*, 226 Ill. App. 3d at 250.) A number of other jurisdictions have held that a hospital will be liable for the negligence of a treating physician who is an apparent agent even if the physician's actual relationship to the hospital is that of an independent contractor. See, *e.g.*, *Paintsville Hospital Co. v. Rose* (Ky. 1985), 683 S.W.2d 255, 257; *Grewe v. Mount Clemens General Hospital* (1978), 404 Mich. 240, 252, 273 N.W.2d 429, 432-33; *Hardy v. Brantley* (Miss. 1985), 471 So. 2d 358, 370-71; *Adamski v. Tacoma General Hospital* (1978), 20 Wash. App. 98, 111, 579 P.2d 970, 977.

■ We believe that the cases recognizing apparent agency in this context fail to take into account the unique nature of the relationships between physicians and patients and between physicians and hospitals especially in emergency situations. As the court pointed out in *Greene,* the treating physician directs and controls the treatment administered to an emergency room patient. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1015; see also *Johnson v. Sumner* (1987), 160 Ill. App. 3d 173, 175.) Although a hospital's medical staff often engages in a peer-review process, it is not realistic to expect the staff or the hospital administration to direct or control treatment to an individual emergency room patient especially when split-second decisions are required. (See *Greene,* 147 Ill. App. 3d at 1015.) This factor demands recognition of the independent relationship between a hospital and an emergency room physician and militates strongly against extension of a hospital's vicarious liability to physicians who are not actual agents or employees of the hospital. 147 Ill. App. 3d at 1015.

Additionally, applying the doctrine of apparent agency in this situation would be contrary to the fundamental public policy of tort law that the tort-feasor be financially responsible to the injured party for damages resulting from his or her conduct. (*Johnson,* 160 Ill. App. 3d at 175.) For these reasons we conclude that a hospital may be held

vicariously liable for the negligence of an emergency room physician only if the physician was an actual agent or employee of the hospital.

■ As the court pointed out in *Greene*, a hospital is still guilty of negligence if it knows or should have known that a physician is incompetent but allows the physician to practice in its facility. (*Greene*, 147 Ill. App. 3d at 1015; see also *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 739.) This would constitute a breach of the hospital's duty to supervise and review patient care. (*Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 198-99.) A hospital cannot be reasonably expected to insure that independent physicians practicing within the facility will never be negligent, however. (*Pickle*, 106 Ill. App. 3d at 739.) In our view, applying the doctrine of apparent agency in a case such as this would be a step toward the recognition of such a duty. We decline to take this step.

For the above reasons, the order of the circuit court of De Kalb County granting summary judgment to the hospital is affirmed.

Affirmed.

WOODWARD, J., concurs.

JUSTICE McLAREN, dissenting:
I respectfully dissent. I disagree with two aspects of the majority opinion and therefore must respectfully dissent. First, I agree with the plaintiff that an issue of material fact exists because the consent form formulated by the hospital clearly states that the physician is an employee of the hospital. I therefore believe that reasonable minds could differ as to whether the physician was or was not an employee of the hospital. Although the physicians billed for their services separately and the administrator stated that the hospital did not withhold taxes and the like, these facts ought not be dispositive of whether there was an agency or apparent agency relationship. I believe that the factual matters raised in the pleadings, affidavits, depositions, and exhibits do not clearly demonstrate the absence of some form of agency relationship and preclude us from determining, as a matter of law, that summary judgment was proper.

Second, I disagree with the majority in its decision to exempt hospitals from the application of the legal principles of apparent agency and/or agency by estoppel.

The emerging trend of the law is to recognize that a hospital may be vicariously liable for negligent medical acts committed on its premises by health-care providers who are apparent or ostensible agents

(*Uhr*, 226 Ill. App. 3d at 251 (and cases cited therein); *Sztorc*, 146 Ill. App. 3d at 278-79), or who are deemed agents by estoppel (see, *e.g.*, *Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278-79; *Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 44-45 (estoppel must be shown by good-faith reliance on conduct of another which leads person to change his position for the worse)).

Of the other States that have considered the issue in recent years, the near-unanimous rule is that independent contractor status is not automatically a bar to a hospital's vicarious liability for malpractice committed on its premises and particularly in the emergency room. See, *e.g.*, *Martell v. St. Charles Hospital* (1987), 137 Misc. 2d 980, ____, 523 N.Y.S.2d 342, 349-50 (and numerous cases cited therein); see also *Jackson v. Power* (Alaska 1987), 743 P.2d 1376, 1380, 1380 n.7 (and cases cited therein; court criticized *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, for its refusal to recognize apparent agency in tort actions for medical malpractice, but *Greene* court may have overlooked *Sztorc*, 146 Ill. App. 3d 275).

In reaching this conclusion, other jurisdictions have cited section 429 of the Restatement (Second) of Torts, which states: "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants." Restatement (Second) of Torts §429 (1965); *Martell*, 137 Misc. 2d at ____, 523 N.Y.S.2d at 350.

Still others cite section 267 of the Restatement (Second) of Agency, which states: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." (Restatement (Second) of Agency §267 (1958); *Martell*, 137 Misc. 2d at ____, 523 N.Y.S.2d at 350; see also *Jackson v. Power*, 743 P.2d at 1380 (examining rules of both Restatements).) One of the common themes in these cases is that, when patients seek medical treatment at a hospital's emergency room, they are unaware of the contractual relationship between the hospital and the physicians who provide medical services. The patients in this situation have looked to the hospital as the provider of medical services; the hospital has given the appearance that it is the provider of the medical services; and the patient

has reasonably relied on that appearance. *Martell*, 137 Misc. 2d at ____, 523 N.Y.S.2d at 350.

In *Martell*, the court went beyond recognizing the principle of apparent agency and concluded that sound public policy demanded that a full-service hospital should not be permitted to insulate itself contractually from acts of medical malpractice committed in its emergency room. The court reasoned that, even with knowledge that emergency room physicians were independent contractors, an individual requiring emergency room medical care, given a choice, would nevertheless opt for the emergency room of the hospital which that individual perceived to have the better reputation. It is the hospital's location and reputation which draw patients to its emergency room, as well as the exigencies of the moment, and, in this regard, the contractual relationship between the hospital and the emergency room physicians is irrelevant as a practical matter. *Martell*, 137 Misc. 2d at ____, 523 N.Y.S.2d at 351-52.

Other courts, although recognizing vicarious liability of hospitals under apparent agency or agency by estoppel principles, have found that a hospital may also be held liable for the acts of independent contractors based on the principle of the "nondelegable duty." Under this principle, an acute care hospital may be held liable, as a matter of law, for negligence or malpractice committed by a physician on a patient who came to the hospital seeking emergency room services. This is so because the hospital, as a highly regulated, commercial institution, is charged by law with a nondelegable duty to provide nonnegligent health-care emergency services. *Jackson v. Power*, 743 P.2d at 1385.

Still other courts have premised liability on "corporate negligence." This variant of the (direct) liability of a hospital for the malpractice of physicians on its premises, even where they are not agents or employees, is a doctrine under which the hospital may be held liable if it fails to uphold the proper standard of care owed to the patient, which is to ensure the patient's safety and well-being while at the hospital. (See, *e.g.*, *Thompson v. Nason Hospital* (1991), 527 Pa. 330, 339, 591 A.2d 703, 707.) Under this doctrine, the hospital has a nondelegable duty which the hospital owes directly to the patient, and the injured party does not have to rely on and establish the negligence of a third party. The hospital has an independent duty, among others, to oversee all persons who practice medicine within its walls as to patient care. *Nason Hospital*, 527 Pa. at 339, 591 A.2d at 707, citing *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326.

Thus, in *Nason Hospital,* the Pennsylvania Supreme Court held that hospital staff members have a duty to recognize and report abnormalities in the treatment and condition of its patients, and, if the attending physician fails to act after being informed of such abnormalities, it is then incumbent upon the hospital staff member or employee to so advise the hospital authorities so that appropriate action might be taken. When there is a failure to report changes in a patient's condition or question a physician's order which is not in accord with standard medical practice and the patient is injured as a result, the hospital will be liable for such negligence where it has actual or constructive notice of a defect or procedure which caused the harm and the hospital's negligence was a substantial factor in bringing about the harm. *Nason Hospital,* 527 Pa. at 342-43, 591 A.2d at 708-09.

Until recently, in Illinois, there have been two theories of liability permitting recovery of damages from a hospital in a medical malpractice case: (1) the hospital may be liable because of a principal-agency relationship between the hospital and the physician; and (2) the hospital may owe a duty, independent of any relationship between physician and patient, to review and supervise the medical care administered to a patient. (*Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 198; *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 550, citing *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326.) In one case, the latter theory has been referred to as corporate negligence. (See *Andrews v. Northwestern Memorial Hospital* (1989), 184 Ill. App. 3d 486, 488, 491.) Thus, for example, a hospital has a duty to know the qualifications and the standard of performance of the physicians who practice on its premises. It is a breach of the hospital's duty of care to its patients to permit a physician who the hospital knows or should have known is unqualified, or negligent, to practice on its premises. *Rohe,* 203 Ill. App. 3d at 199, citing *Reynolds v. Mennonite Hospital* (1988), 168 Ill. App. 3d 575, 578.

Under the rubric of corporate negligence, it may be said, for example, that a hospital has a duty to use reasonable efforts to assist the treating physician in obtaining consultation in a specialized area of treatment in accordance with established standards. (*Hansbrough,* 141 Ill. App. 3d at 550; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 716-18.) The theory of corporate negligence appears to stem from the following language in *Darling*:

> " 'The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact.

Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes [sic], as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of "hospital facilities" expects that the hospital will attempt to cure him, not that its nurses or other employes will act on their own responsibility.' (Fuld, J., in *Bing v. Thunig*, (1957) 2 N.Y.2d 656, 143 N.E.2d 3, 8.) The Standards for Hospital Accreditation, the state licensing regulations and the defendant's bylaws demonstrate that the medical profession and other responsible authorities regard it as both desirable and feasible that a hospital assume certain responsibilities for the care of the patient." *Darling*, 33 Ill. 2d at 332.

More recently, three different panels of the Appellate Court, First District, have recognized a third basis for the liability of a hospital on the basis of apparent agency or agency by estoppel, notwithstanding the hospital's defense that the staff were independent agents. In *Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, in reversing summary judgment entered in favor of the defendant hospital, the court determined that, despite the hospital's claims that its radiologists were neither its actual nor its apparent agents, there was a question of fact regarding the agency relationship of the defendants which precluded summary judgment. In *Sztorc*, plaintiff was injured as a result of overexposure to radiation in the radiation department located in the hospital. Operative facts considered included the following: (1) the radiology department was independently operating within the hospital and each physician in the department was not employed by the hospital but had staff privileges; (2) the radiology group collected its fees directly; (3) the equipment was owned by the department; and (4) the radiation department served both inpatients and outpatients, and there was no manner by which patients or the general public could differentiate between the department's employees and those of the hospital itself.

The *Sztorc* court first noted that, under *Darling*, even absent an actual agency relationship, a hospital may be held liable for the acts of independent physicians practicing on the premises. After noting that several other States had adopted the doctrine of apparent agency, the court pointed out that the underlying rationale behind these decisions is that patients, who are generally unaware of the in-

dependent status of the treating physicians, should not be bound by secret limitations which are contained in private contracts between a hospital and a doctor. (*Sztorc*, 146 Ill. App. 3d at 278.) The court adopted the theory of apparent agency and concluded that the totality of the facts in the case would lead a normal person, such as the plaintiff, reasonably to believe that the radiology services being provided to her were being provided by the hospital and there was a triable issue of fact with respect to apparent agency precluding summary judgment. 146 Ill. App. 3d at 279.

In *Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, a medical malpractice case involving a hospital setting, the court recognized the doctrine of apparent agency which rests on the doctrine of equitable estoppel; there is no practical difference between them. Citing 3 Am. Jur. 2d *Agency* §80 (1986), the court stated that, to prove apparent agency, one must establish (1) the principal's consent to or knowing acquiescence in the agent's exercise of authority; (2) the third person's knowledge of the facts and good-faith belief that the agent possessed such authority; and (3) the third person's reliance on the agent's apparent authority to his or her detriment. *Northern Trust Co.*, 168 Ill. App. 3d at 278.

Most recently in *Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, after an extensive review of the cases from various jurisdictions including Illinois, the court recognized the expansion of hospital liability for medical malpractice committed on a hospital's premises by health-care providers who are apparent or ostensible agents. Plaintiff has submitted this case as additional authority for her position. In *Uhr*, the court considered whether there was sufficient evidence to support a jury verdict against the hospital where the negligence of its "contract" anesthesiologist was alleged to have contributed to the death of the patient. The plaintiff proceeded on a theory of apparent agency. The *Uhr* court specifically declined to analyze the theory of liability on the basis of traditional rules of agency because that application has often led to unrealistic and unsatisfactory results from the standpoint of the injured party and from the standpoint of rationally apportioning fault. (*Uhr*, 226 Ill. App. 3d at 251.) The court noted that the delivery of the anesthesiologist's services was intertwined with those of the hospital's operating room employees.

The *Uhr* court noted that *Northern Trust* had stated that Illinois courts do not infer the element of detrimental reliance and the doctrine of equitable estoppel would not be applied without satisfaction of the requirement. The *Uhr* court rejected that requirement because it

continues the charade which limits the liability of certain health-care providers. *Uhr*, 226 Ill. App. 3d at 249.

In his dissent in *Uhr*, Justice Rizzi urged a broader rule. He opined that, if it is established that a doctor negligently treated a hospital's patient on the premises of the hospital, the hospital should be liable for the injury or death of the hospital's patient if the injury or death was a proximate result of the doctor's negligence and the doctor was authorized by the hospital to treat the hospital's patient. The vagaries of apparent or ostensible agency or estoppel should not be issues. Justice Rizzi stated that the outmoded conception that a hospital does not undertake to treat the patient no longer reflects reality. Since the hospital is the central point of the compass around which its patients receive medical care by doctors functioning on its premises and the hospital's costs of delivering care are factored into the amount that patients are charged by the hospital, it follows that a patient at a hospital is indeed the hospital's patient and that the hospital is responsible for the negligence of a doctor who performs medical services on *the hospital's patient* on the premises of the hospital. *Uhr*, 226 Ill. App. 3d at 280 (Rizzi, J., dissenting).

My review of the cases discussed above leads me to disagree with the majority in this case. My disagreement is based primarily upon section 267 of the Restatement (Second) of Agency. Furthermore, although there is merit to the holdings in the first district cases, I do not agree that apparent agency ought to be so broadly applied.

In this case there was a written statement made by the hospital as to the employer/employee relationship contrary to that of the claimed independent contractor relationship. If the hospital is allowed to say one thing and claim another, this court would be permitting the perpetration of a misrepresentation at best and a fraud at worst upon the patrons of this particular hospital.

I see no reason why hospitals should be allowed to escape liability in situations where the hospital represents independent contractors to be employees as was set forth in the consent form. The majority seems to be concerned with opening up a window of liability if the plaintiff was allowed to proceed on the merits. I would suggest that this window would never have opened if the hospital had indicated on the consent form that the doctor was an independent contractor, rather than an employee.

The hospital had and has the ability to limit its liability by properly disclosing the relationship between it and its independent contractors. To immunize the hospital under the alleged facts herein is taking a step backwards, in my mind, rather than taking a step at all

in allowing an individual or entity to escape liability for its own "misrepresentations" of fact.

In conclusion, I believe section 267 of the Restatement of Agency ought to apply to this cause. I also believe the plaintiff has presented sufficient evidence arguably to sustain its case. Therefore, I would reverse the trial court's grant of summary judgment in favor of the defendant.